## BENNETT v. RIVERLAND CO.

(District Court, N. D. Oklahoma. May 18, 1925.)

No. 4102.

1. Brokers ⊜86(5) — Single sale of three properties by owner no evidence that broker found purchaser for one on terms satisfactory to owner.

It could not be found that plaintiff broker found a purchaser willing and able to purchase, on terms satisfactory to defendant, the one property listed with plaintiff, merely because defendant made a single sale of three properties, including that listed, to a company to which plaintiff offered it at a price not acceptable to it.

2. Corporations ⊜432(12)—President authorizing stockholder to contract must himself be shown to have been authorized.

Testimony that the president of a company authorized E., a stockholder, to contract with a broker on behalf of the company, in the absence of proof that president was authorized to so contract, was no evidence of authority of E. to so contract.

3. Corporations ⊜432(12) — Ratification by corporation of unauthorized employment of broker held not shown by subsequent sale by corporation.

Unauthorized employment of a broker on behalf of a corporation by one of its stockholders to sell one of its properties having been repudiated, and he notified thereof, by its officers, as soon as they learned thereof, the mere fact that such property, with two others belonging to the corporation, were afterwards sold by it to the individual with whom the broker had communicated, is insufficient to show ratification.

4. Brokers ⊜55(1)—Broker first approaching buyer held not procuring cause of sale.

Broker who merely negotiated with M., by stating an unacceptable price, for sale of a property of defendant, before his assumed authority was repudiated, and thereafter ceased to actively procure the sale, was not the procuring cause thereof; another broker having approached M. in ignorance of the previous negotiations of the first broker, and subsequently brought about the sale of such property with other properties.

At Law. Action by George E. B. Bennett against the Riverland Company. Judgment for defendant.

F. E. Riddle, of Tulsa, Okl., for plaintiff.

Edgar A. De Meules, of Tulsa, Okl. (Ramsey, De Meules & Martin, of Tulsa, Okl., of counsel), for defendant Riverland Co.

KENNAMER, District Judge. The plaintiff in this action is a broker in oil properties and sues for certain commissions he claims because of a sale of oil properties made by the defendant to the Mutual Oil Company. The testimony of the various witnesses discloses that the defendant company possessed certain oil properties that it wished to sell. The president of the defendant company discussed the advisability and possibility of such a sale with one of the stockholders, a Mr. Elson, who, subsequent to the conversation, listed the properties for sale with a broker, but no sale resulted. The conduct of Elson in listing the property with Bennett met with the disapproval of the officers of the Riverland Company, and Elson was informed that the defendant company did not want their properties placed with brokers for sale and did not want the properties peddled about promiscuously. Without authorization from the managing officers of the defendant company, and without as much as informing such officials, the stockholder, Mr. Elson, listed the property with Bennett, the plaintiff herein, for sale. The plaintiff was instructed to secure any additional information he might need in making the sale from the stockholder; he was not to go to the officers of the Riverland Company, which it seems to me should have constituted the proper source for such information. The plaintiff communicated with the manager of the Mutual Oil Company and ascertained that it would be interested in the property since it was in the market for some producing properties. Plaintiff sent a description of the property to the local manager of the Mutual Company and communicated with him several times in regard to it, stating a price for the property which was not acceptable to the Mutual Company, which fact was indicated to the plaintiff at the outset. Plaintiff advised the manager of the Mutual Company that he thought it possible to purchase the property for less than the price he had named, but requested him not to talk to the officials of the Riverland Company about it.

At the request of the plaintiff, the manager for the Mutual Company inspected the one property mentioned to him by the plaintiff, but no communication or negotiation was had with the officials of the Riverland Company in regard to the property.

Subsequently, the Riverland Company through a broker by name of Sheridan, sold the property Bennett had attempted to sell to the Mutual Company with two other smaller properties. Sheridan called upon the manager of the Mutual Company and offered him the properties, and was informed that Bennett had previously offered one of the properties for sale. Just why Sheridan presented these properties to the Mutual Company as a prospective purchaser was not disclosed by the testimony in the case, but the evidence shows that this was Sheridan's first information that Bennett had attempted to sell the property. Sheridan conveyed this information to the officers of the Riverland Company, and they were unacquainted with Bennett. They inquired of Elson, and were informed that he had listed the property with Bennett. Elson was then told that he had no authority to so contract for the Riverland Company, and Bennett was immediately notified that Elson had no authority to employ him, and that they did not wish him to have anything further to do with the property. Subsequent to these conversations within about 20 days, through the efforts of Sheridan, the Mutual Company secured an option for the purchase of the three properties, which included the one property Bennett had offered to the Mutual Company.

After the option had been extended a short period of time, through the efforts of Sheridan, the Mutual Oil Company purchased the three properties from the Riverland Company at a price less than the price named by Bennett for the one property. It is Bennett's contention that although he ceased to further complete the sale after he was informed by the officials of the Riverland Company that he was to have nothing to do with the sale of the property, by the subsequent sale the Riverland Company ratified the contract of agency made by the stockholder Elson, with plaintiff, and that he (the plaintiff) was the procuring cause of the sale and is entitled to the commission Elson agreed should be paid him for sale of the property.

[1] Counsel for the plaintiff insist that Bennett's contract with Elson, in listing the one property with him for sale, was that the plaintiff was only to find a purchaser able and willing to purchase the property, on terms to be agreed upon by negotiation between the purchaser and the seller. When the plaintiff presented the property for sale to the Mutual Oil Company and requested it to look at the property, and the Mutual Company did inspect the property pursuant to the request of the plaintiff, and a sale

resulted from these negotiations, then the plaintiff had performed all the services for which he was employed and he is entitled to recover his commission.

With this contention I cannot agree. The testimony of the plaintiff himself is to the effect he was to find a purchaser that would buy the one property alleged to have been listed with him on terms satisfactory to the Riverland Company. No contract of sale was ever consummated on the one property which the plaintiff contends was listed with him. Thus it would be impossible to find from the evidence that the plaintiff ever found a purchaser willing and able to purchase the property listed with him on terms satisfactory to the Riverland Company. The uncontradicted testimony shows that the only sale consummated between the Mutual Company and the Riverland Company was of three properties including the one which the plaintiff alleges was listed with him. Such sale was made after the Riverland Company, on its first information had that the plaintiff claimed Elson had listed one of the properties with him, had repudiated his alleged authority to sell.

[2, 3] Furthermore, that Elson was not authorized to contract with a broker in behalf of the Riverland Company is beyond doubt. Plaintiff offered testimony tending to prove that the president of the defendant company authorized Elson, the stockholder, to contract with a broker on behalf of the Riverland Company, but no proof that the president was authorized by the Riverland Company to so contract was offered. The plaintiff's attempt was to establish a ratification by the defendant company of the contract of employment, and I am of the opinion that in this he has failed. The undisputed evidence proves that as soon as the officials of the Riverland Company ascertained that Bennett was attempting to sell the property, they immediately indicated their opposition to his assumed authority and immediately repudiated it, and such repudiation was conveyed to Bennett. The mere fact that the property was sold with two other properties to the same company that Bennett had communicated with is not sufficient to show a ratification. The Supreme Court of Oklahoma, in the recent case of Skelly Oil Co. v. Pruitt, 94 Okl. 232, 221 P. 709, considered a situation similar in many respects to the one in question, and held, at page 233, 221 P. 711, that "the fact that the principal or vendee of real estate may have knowledge that a volunteer or stranger has assisted his agent in procuring the purchase, if unau-

thorized in the first instance, will not bind the principal or, vendee, in receiving the conveyance."

In Loving v. Hesperian Company, 176 Mo. 253, 75 S. W. 1102, where a like condition of the record was shown upon the facts, the court said: "Another claim is advanced, to wit, that even if the letter of March 12th was a revocation of the agency, and plaintiff did not have authority to procure and introduce Richards to defendant as a purchaser, still the acceptance by defendant of Richards as a prospective buyer with knowledge that plaintiff had sent him operated as a ratification, and rendered defendant liable for plaintiff's commission. This claim, like that of estoppel, is dehors the pleadings in the case. No such issue is raised. Wade v. Hardy, 75 Mo. 399. Moreover, with defendant constantly repudiating plaintiff's right to sell its ranch, and advising it all the time, and long before it entered into negotiations with Richards, that it would not recognize its claim for a commission, we think that it is plain that, even if pleaded, the facts would not have amounted to a ratification, so as to render defendant liable to plaintiff. One cannot make another his debtor in this manner."

In many cases, a clear intent to ratify is required before a ratification may be found. 74 App. Div. 397, 77 N. Y. S. 501. It is very evident from the evidence that there was no intent to ratify in the instant case; the only intent expressed was that of repudiation, and it was expressed to both the broker and the stockholder who purported to employ the broker.

There was neither allegation nor proof that the defendant company had acted in bad faith in repudiating the action of the plaintiff in regard to the sale of the property, or in its employment of Sheridan, the other broker. The evidence clearly established that Sheridan was employed before the Riverland Company had knowledge of Bennett's action in regard to the property. It is likewise undisputed that Sheridan approached the Mutual Company in an effort to sell them the properties without knowledge that Bennett had previously offered them the one property. Sheridan, no doubt, possessed information that the Mutual Company was in the market for some producing properties just as Bennett did, and there can be no inference raised that he appropriated Bennett's services.

[4] Had it been established that Bennett was properly authorized to sell the property for the defendant company, which indeed it was not, I am of the opinion that he would not be entitled to the commission he here seeks. Where an owner of property places it for sale in the hands of a second agent after the relations with the first have terminated, if the second agent makes a sale, though possibly on different terms, to a customer with whom the first agent had merely negotiated, not resulting directly in the purchase of the property, the owner is liable for commissions to the agent who finally effected the sale. The cases establishing this proposition are numerous, and collections of them are to be found in notes in 25 L. R. A. (N. S.) 164 and 27 L. R. A. (N. S.) 195.

In other words, Bennett was not the procuring cause of the sale; he merely negotiated with the Mutual Company before his assumed authority was repudiated, and thereafter he ceased to actively procure the sale. Sheridan, the other broker, approached the Mutual Company in ignorance of the previous negotiations of Bennett, and subsequently brought about the sale of the properties, which entitled him to the commission he has been paid by the Riverland Company.

For the reasons that the plaintiff has failed to establish that he was properly authorized to sell the property for the defendant company, and for his failure to show that he was the procuring cause of the sale, judgment is entered for the defendant, the Riverland Oil Company.