## BENNETT v. RIVERLAND CO.

(Circuit Court of Appeals, Eighth Circuit.
October 27, 1926.)

### No. 7162.

**1. Exceptions, bill of ⊜⇒32(1).**

Under Rev. St. § 953 (Comp. St. § 1590), trial court alone can settle bill of exceptions.

**2. Exceptions, bill of ⊜⇒43(1).**

Trial court has no jurisdiction to settle bill of exceptions, after expiration of judgment term and extensions thereof.

**3. Appeal and error ⊜⇒643(4).**

Motion for diminution of record, to include matters properly parts of the bill of exceptions, will be denied, when made after time within which trial court had jurisdiction to settle bill of exceptions.

**4. Appeal and error ⊜⇒748(1).**

Circuit Court of Appeals would be justified in refusing to consider assignments not in accordance with rule 11.

**5. Brokers ⊜⇒85(1)—Evidence of corporation's employment of broker and payment of commission held admissible to explain purchase by person previously approached by another broker, claiming commission under contract with stockholder.**

Where broker claiming commissions was employed by stockholder of defendant corporation, and had approached purchaser, who subsequently bought property, evidence showing employment of another broker by defendant and payment of commission to him was admissible to explain negotiations with purchaser.

In Error to the District Court of the United States for the Northern District of Oklahoma; Franklin E. Kennamer, Judge.

Action by George E. Bennett against the Riverland Company. Judgment for defendant (5 F.[2d] 676), and plaintiff brings error. Affirmed.

F. E. Riddle, of Tulsa, Okl., for plaintiff in error.

George S. Ramsey, of Tulsa, Okl. (Edgar A. De Meules and Villard Martin, both of Tulsa, Okl., were with him on the brief), for defendant in error.

Before STONE, KENYON, and BOOTH, Circuit Judges.

STONE, Circuit Judge. This is a writ of error by Bennett from an adverse judgment in an action by him against the Riverland Company for a broker's commission alleged to have been earned in the sale of oil and gas properties belonging to the company.

The issues presented here are (1) whether Bennett was employed by the company (originally or by ratification); (2) whether the company is estopped to deny such employ-ment; and (3) whether, if he was so employed or such estoppel exists, he was the procuring cause of the sale. The trial court found all of the above issues against the plaintiff.

The petition was in two counts. The first count alleged ownership by defendant of 320 acres of oil producing property in the Osage Nation and of "some smaller properties situated in the vicinity" of such above acreage; the employment of plaintiff by one Elson, "who was largely interested as a stockholder in said defendant," to find a purchaser for such 320 acres of oil producing property; the acceptable price and the understanding to pay the usual commission of 5 per cent.; that he brought the property to the attention of the Mutual Oil Company, which was a willing and able purchaser, and arranged for that company to examine the property; that the defendant ratified his employment and completed the negotiations resulting in a sale; that he was at all times ready and willing to assist in any way desired in such negotiations; that a sale resulted from his bringing the parties together. The second count is that, acting under the belief that he was employed by defendant to negotiate this sale, he first brought the property to the attention of the Mutual Oil Company and initiated the negotiations; that "defendant voluntarily, with knowledge of said facts, received the benefit and the fruits of plaintiff's services as herein alleged, and thereby ratified his authority to negotiate said sale and adopted his acts as such and having received the benefit and fruits of his services with knowledge, is now estopped from repudiating the same and from denying its liability in payment for his services so rendered."

The answer to each count of the petition was a general denial and a plea that, upon August 4, 1923, before plaintiff had brought defendant and the purchaser together upon mutually agreeable terms of sale, defendant repudiated "the alleged authority" of plaintiff and his connection with the transaction.

The reply (1) denied the affirmative matter in the answer; and (2) averred:

"That long prior to August 4, 1923, the date the defendant alleges it revoked plaintiff's authority, said plaintiff had rendered the services agreed by him to be rendered in finding the Mutual Oil Company as a purchaser for defendant's properties, and that he had presented said properties to said Mutual Oil Company, and caused the said Mutual Oil Company on or about July 21st to examine said properties, and the said purchaser, the Mutual Oil Company,

and the defendant herein were brought together in negotiations prior to the 4th day of August, 1923, on terms of a sale and purchase of said properties described in plaintiff's complaint, which said negotiations continued uninterruptedly and without any breaking off or suspension until resulting in a deal satisfactory to both parties, and the final closing of same, all of which negotiations were the result of plaintiff's efforts and of the services rendered by plaintiff, and said defendant thereafter was unauthorized to revoke plaintiff's authority and thereby defeat his right to the commission agreed to be paid; that plaintiff was the procuring cause of said sale;" and (3) that the alleged attempted revocation was in bad faith and defendant "is estopped from relying" thereon. The trial was to the court on written stipulation waiving jury.

[1-3] A "motion for diminution of record" is filed by plaintiff in error. Thereby he seeks to have made part of the record the following: (a) A motion for judgment in favor of plaintiff claimed to have been made while the case was under submission and advisement; (b) requests for special findings of fact and for statement of particular conclusions of law, claimed to have been filed while the case was under submission and advisement. The matters suggested are properly parts of a bill of exceptions. The bill of exceptions herein was prepared by plaintiff in error, approved by counsel for both parties and settled and signed and made part of the record on July 14, 1925. It does not contain the matters covered by this motion. The term during which the judgment was entered, the motion for new trial denied and the bill of exceptions settled had expired before this motion was filed. It is settled law that the trial court alone can settle a bill of exceptions. Rev. Stat. § 953 (Comp. St. § 1590); Guardian Assurance Co. v. Quintana, 227 U. S. 100, 104, 33 S. Ct. 236, 57 L. Ed. 437. It is equally well settled that even the trial court has no jurisdiction to settle a bill of exceptions after expiration of the judgment term and any extensions thereof. Exporters v. Butterworth, etc., Co., 258 U. S. 365, 42 S. Ct. 331, 66 L. Ed. 663; U. S. v. Mayer, 235 U. S. 55, 35 S. Ct. 16, 59 L. Ed. 129; Greyerbiehl v. Hughes Elec. Co. (C. C. A.) 294 F. 802, this court. These rules apply to amendments to a bill of exceptions. Exporters v. Butterworth, etc., Co., supra; Michigan Ins. Bank v. Eldred, 143 U. S. 293, 298, 12 S. Ct. 450, 36 L. Ed. 162; Kreuzer v. United States, 254 F. 34, 165 C. C. A. 444, this court. The Michigan Ins. Bank Case, just cited, presented, in all essentials, the same situation as here involved. Because this court has no power to settle a bill of exceptions, originally or by amendment; and because the time within which the trial court had jurisdiction so to do expired before this motion was filed, the motion must be and is denied.

Eliminating such assignments of errors as are based on the subject-matter of the above motion and such as have to do purely with denial of the motion for new trial (not here reviewable, Addington v. United States, 165 U. S. 184, 185, 17 S. Ct. 288, 41 L. Ed. 679; Wheeler v. United States, 159 U. S. 523, 524, 16 S. Ct. 93, 40 L. Ed. 244; Goff v. United States [C. C. A.] 281 F. 822, 823, this court) there are but three assignments remaining for our consideration (the first, second and third) which are as follows:

"First. The court erred in the admission of testimony over the objection of plaintiff in error in substance and to the effect that the defendant in error employed a broker by the name of J. W. Sheridan on some date between the 1st and 8th of August, 1923, and that long after this suit was filed the defendant in error had paid the said Sheridan the commission upon the sale of the properties involved, and also erred in the admission of the testimony of the witnesses, and of the testimony of J. W. Sheridan, in substance and to the same effect, as is shown more in detail in the bill of exceptions, for the reason that said testimony did not prove or tend to prove any issue in said cause and did not, or should not have militated against the plaintiff in error's right to recover.

"Second. That the court erred in considering the testimony of the witnesses of the defendant in error, including the testimony of the said J. W. Sheridan, in substance and to the effect that the said J. W. Sheridan was employed by the defendant in error on some date between the 1st and 8th of August, 1923, as a broker to sell the properties involved, and erred in rendering judgment thereon, for the reason that the same did not support or tend to support any issue in said cause; and, for the further reason that the services agreed to be rendered by the plaintiff in error had been rendered prior to said date, and that negotiations were then pending for the sale of said properties between the said defendant company and said purchaser thereof, which negotiations it is shown by the undisputed testimony was brought about by the plaintiff in error and that he was the procuring cause of said sale.

"Third. The court erred in overruling plaintiff in error's motion to strike said testimony referred to in the first and second as-

signments above set out for the reasons therein assigned."

[4] It is clear that these three assignments relate to but one matter, to wit, the admission of evidence concerning the employment of J. W. Sheridan to make the sale and his activities in connection therewith. The form of these assignments is not in accordance with rule 11 of this court and we would be justified in refusing to consider them. However, if they were to be considered, we think they are not established.

To understand the place of this evidence in the case it is necessary to briefly outline the situation as shown by the entire evidence.

[5] The evidence on behalf of plaintiff was to the effect following. W. H. Elson was a stockholder in the Riverland Company. Early in July, 1923, in conversation with A. P. Wright, president of the company, he was informed that it was desirable that the company sell a certain oil producing tract (the Drexel property) consisting of about 320 acres. Elson told Wright he "was going ahead and find a purchaser for it." He was cautioned not to "hawk" the property "around town promiscuously." Elson told Wright a commission would have to be paid as the matter would have to go through a broker and Wright said he expected to pay a commission of five percentum. Between the 10th and middle of July, he told Bennett of the situation. Bennett said he thought he had a possible buyer, the Mutual Oil Company. Elson furnished Bennett with data (obtained by Elson in person from the company records) concerning the production on this property. Neither Elson nor Bennett communicated any of the above happenings between them to Wright or any other officer of the company.

The evidence, up to this point, for defendant is that Wright never gave Elson any authority to sell the property but expressly forbade him going to any broker about it—this prohibition being occasioned by other activity of Elson concerning this property before he had spoken to Bennett. Wright and other officers of the company denied any knowledge of Bennett or his activity until early in August after Sheridan had been employed by them to sell the property and had entered upon negotiations. When so informed, they promptly denied any authority in Elson or Bennett or any knowledge of the activity of either.

The following facts are undisputed: About July 18th, Bennett communicated with the local representative of the Mutual Oil Company, which subsequently bought the property. This representative could take no definite action in the absence of the president but he was interested, secured some production data from Bennett and, a few days later, inspected the property. Early in August, Sheridan (an oil property broker) informed Wright and Jones (vice president of defendant) that he thought the Mutual might be interested in buying the above and other property from defendant. With their consent, he went to see the local representative of the Mutual who informed him that Bennett had already brought the 320-acre tract to his attention and was negotiating concerning it. Sheridan promptly communicated this information to Wright and to Jones. These officials declared Bennett had no authority to do so and they did not desire him to do so. This attitude was promptly made known to Elson, to Bennett and to the Mutual. Thereafter, negotiations proceeded directly between the officials of defendant and of the Mutual. The result was the purchase of the property presented to the Mutual by Sheridan at the price suggested by Sheridan (which was more than that suggested by Bennett). The property sold included not only leases on the 320-acre tract (then producing between 1,100 and 1,200 barrels of oil daily) but an undivided half interest in 480 acres (producing about 200 barrels daily) and an undivided fourth interest in another 320-acre tract (producing about 450 barrels daily).

It is the gravamen of plaintiff's contention that he brought the contracting parties together. There is no dispute that Bennett had first spoken to the Mutual about a portion of the property sold. There is no dispute that the sale was to the Mutual, shortly after Bennett had done this. In the face of the undenied sale to the Mutual and the denial that Bennett had brought the contracting parties together, it was most pertinent for the defendant to explain how it happened to begin negotiations with the Mutual. The evidence concerning Sheridan's connection with and activities in that matter were directly in point on that material issue in the case. We can imagine no ground upon which the court could have excluded such evidence and we think it was properly admitted.

As this view of that matter disposes of the three assignments of errors which we may consider on this record, the judgment must be and is affirmed.