**CAPITAL FOOD MART, INC., a Delaware Corporation, Appellant,**

v.

**SAM BLANKEN & COMPANY, Inc., a Corporation, Appellee.**

No. 5199.

District of Columbia Court of Appeals.

Argued May 11, 1970.

Decided June 22, 1970.

Thomas M. O'Malley, Washington, D. C., for appellant.

Isadore B. Katz, Washington, D. C., for appellee.

Before HOOD, Chief Judge, and KERN and GALLAGHER, Associate Judges.

KERN, Associate Judge:

Appellee Blanken, a "business chance" broker, obtained a listing to offer for sale the 707 Restaurant, located in Maryland. The listing was exclusive for ninety days, and thereafter became an open listing until 5 days after such time as either the broker or seller might give notice of termination. Appellant Capital Food Mart, Inc., owned the 707 Restaurant and the listing was signed by George Stavrakas, the treasurer of that corporation. Blanken secured one Chester McClelland as a prospective purchaser, and thereafter negotiations took place involving George Stavrakas, William Stavrakas (described in the complaint as president of Capital Food Mart), George Spyropoulos (attorney, stockholder, and officer of Capital Ford Mart), Blanken and McClelland.[1] These negotiations apparently did not result in a sale.

About one year after the listing had been executed, but prior to any notice of its termination, appellee learned that appellant had in fact sold the 707 Restaurant to McClelland. Appellee demanded the ten

---

1. There was testimony that George and William Stavrakas owned a combined total of more than two-thirds of the stock of appellant corporation, and that small amounts were owned by George Spyropoulos, Mr. Kratinkous (a nephew of William Stavrakas), Mr. Karapipoulous (the accountant for the corporation), and the son-in-law of one of the Stavrakas brothers. The identity of the board of directors of the corporation is not disclosed in the record.

percent commission specified in the listing agreement, and thereafter instituted this action against both appellant and Mc-Clelland. During the course of the trial before a jury, the court dismissed the complaint as to McClelland.[2]

The jury was instructed that in order to find for appellee, it had to be satisfied from a preponderance of the evidence that:

(a) Blanken had been the "procuring cause" of the sale,

(b) George Stavrakas had signed the listing agreement in his corporate capacity, and

(c) "he had the authority to sign a listing agreement."

It rendered a verdict for appellee in the amount of $4500, ten percent of the sales price of $45,000 finally agreed to by McClelland and Capital Food Mart. The sole question on appeal is whether judgment n. o. v. for appellant should have been granted on the ground that appellee failed to establish appellant's liability for the listing agreement executed by George Stavrakas.

There was sufficient evidence[3] to sustain the jury's conclusion that George Stavrakas had signed as an officer of appellant and not as an individual. At the end of his signature on the listing agreement the abbreviation "Treas." appears, albeit partially obscured. The jury could have concluded from this that Stavrakas had signed as treasurer of Capital Food Mart.

However, evidence is lacking that Stavrakas had been *authorized* by the corporation to execute the listing. The authority of an officer of a corporation to bind the corporation may be inherent in his office, may be expressly vested in him, or may be

conferred upon him by virtue of the corporation's course of conduct (apparent authority).

■ "It is a general rule that a corporate officer has no authority, by virtue of his office, to enter into a binding contract for the employment of any person to sell, or aid in selling, corporate property not used, manufactured, or produced by the corporation in the regular course of business for purposes of sale." 19 Am.Jur.2d Corporations § 1202, at 621 (1965). And, because the employment of a broker to sell the corporate business could not be considered an occurrence within the general course of business, the burden was on appellee to prove George Stavrakas' actual, implied, or apparent authority to so bind the corporation. *See* 2 Fletcher Cyclopedia Corporations § 486 (1969).

As for actual authority, we note that no evidence was presented to show corporate action *prior* to the execution of the listing agreement giving George Stavrakas authority to bind the corporation in this manner. Further, there was no evidence of corporate acts *prior* to the execution of the listing agreement that appeared to clothe George Stavrakas with authority to take steps on behalf of the corporation to sell its business. *See* 2 Fletcher, *supra*, § 449; *cf.* Don Kemper Co. v. Beneficial Standard Life Insurance Co., 404 F.2d 752, 756 (3d Cir. 1968).

The record does contain uncontradicted evidence, however, that the corporation *ratified*[4] George Stavrakas' execution of the listing agreement. George Spyropoulos, the only witness at trial for appellant, testified that he had presented purchase offers from appellee on behalf of McClelland to William Stavrakas, appellant's president. Further, a letter admitted into evidence without objection, written by Spyropoulos

2. This order is not questioned on appeal.

3. Appellee has designated as part of the record on appeal the entire deposition of George Stavrakas, who died before trial was held. Pursuant to GS Civ. Rule 26(d) (3) (a), both counsel read

small portions of that deposition to the jury as evidence. Only those excerpts are properly part of the record; we have disregarded whatever else appears in the deposition.

4. *See generally* 2 Fletcher *supra*, § 769.

to appellee, clearly indicated his awareness of appellee's activities in attempting to procure a sale of the business. Thus, the uncontradicted evidence showed that both appellant's president and counsel were aware of appellee's activities, during which time the corporation took *no* steps to discourage appellee.

> [T]here is strong authority for the proposition that the knowledge, in the absence of fraud, of an officer or agent who did not make the unauthorized contract, but who acquired knowledge of the fact of its execution or making, in the course of his employment, is imputable to the principal *as a matter of law.* * * * [T]he contract [would be] binding upon the corporation [if thereafter there was a] failure of the corporation, or its directors, to disaffirm it within a reasonable time.

Ingalls Iron Works Co. v. Ingalls, 177 F. Supp. 151, 164 (N.D.Ala.1959), aff'd, 280 F.2d 423 (5th Cir. 1960) (emphasis added). The corporation's acceptance of appellee's services and the eventual sale of the business to Mr. McClelland is further evidence of implied corporate ratification.

> [W]hen the board of directors accepted the benefit of the plaintiff's services * * * as they did when they adopted the sale which he had negotiated * * * they took upon themselves the obligation to compensate him according to the terms of the agreement under which he acted, whether they knew of its existence or not. * * * They could not play fast and loose with the plaintiff, appropriating his services, and refusing the compensation stipulated for by which those services were obtained.

Bauersmith v. Extreme Gold Mining and Milling Co., 146 F. 95, 99 (W.D.Pa.1906).

*See also* Southern Industries, Inc. v. United States for use of James Bond Trucking Co., 326 F.2d 221, 224 n.5 (9th Cir. 1964); McCartney v. Clover Valley Land and Stock Co., 232 F. 697 (8th Cir. 1916).[5]

■ Although the trial court did not instruct the jury on the issue of ratification by appellant of its treasurer's action, we see no reason to reverse the judgment and remand for a new trial.

In proper circumstances, a federal judge may direct a verdict in favor of the party having the burden of proof. The test, however, in granting a directed verdict for the party with the burden of proof is different from that where his opponent makes the motion. It requires the judge to test the body of evidence, not for its insufficiency to support a finding but rather for its overwhelming effect. He must be able to say not only that there is sufficient evidence to support the finding, even though other evidence could support as well a contrary finding, but additionally that *there is insufficient evidence for permitting any different finding.*

2B Barron & Holtzoff, Federal Practice and Procedure § 1075, at 396 (Wright rev. 1961) (emphasis added, footnote omitted). *Compare* Norfolk-Southern Ry. Co. v. Davis Frozen Foods, Inc., 195 F.2d 662, 665 (4th Cir. 1952), cert. denied, 346 U.S. 824, 74 S.Ct. 41, 98 L.Ed. 349 (1953); Metropolitan Life Insurance Co. v. Adams, D.C.Mun.App., 37 A.2d 345, 348–349 (1944). The evidence that appellant ratified the action of its treasurer in listing the restaurant with appellee is so overwhelming that reasonable men could not entertain doubt with respect to such issue.

Affirmed.

5. Bennett v. Riverland Co., 5 F.2d 676, 678 (N.D.Okl.1925), aff'd, 15 F.2d 491 (8th Cir. 1926), cited by appellant, is inapplicable on its facts:
   It is very evident from the evidence that there was no intent to ratify * * * the only intent expressed was that of repudiation, and it was ex-

pressed to both the broker and the stockholder who purported to employ the broker.
Maryland law appears to follow the general principles of ratification set forth above. *See generally* Webb v. Duvall, 177 Md. 592, 11 A.2d 446 (1940).