[No. 49-40330-1.   Division One.   March 23, 1970.]
Panel 1

KENNETH L. LAMBERT, *Appellant,* v. STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, *Defendant,* KENNETH BURNS *et al., Respondents.*

Bannister, Bruhn & Luvera and Paul Luvera, Jr., for appellant.

Skeel, McKelvy, Henke, Evenson & Betts and W. R. McKelvy, for respondents.

FARRIS, J.—The plaintiff, Kenneth L. Lambert, was injured on May 19, 1966. He was one of four occupants of an automobile that failed to negotiate a curve, sheared a telephone pole, turned over and skidded some distance on its top. Defendant Burns was the driver of the car. On June 17, 1966, the plaintiff and defendant State Farm Mutual Automobile Insurance Company entered into a settlement. In exchange for executing a total release, the plaintiff received $1,345.

When he failed to recover as he had expected, the plaintiff initiated action to set aside the release on the grounds of fraud, mutual mistake of fact, misrepresentation, overreaching and duress on the part of the defendant insurance company. The trial court sustained defendant's challenge to the sufficiency of plaintiff's evidence at the close of the plaintiff's case. Plaintiff appeals from this order of dismissal.

It is plaintiff's contention that there was sufficient evidence on three separate questions to take the case to the jury: (1) The plaintiff contends that there is sufficient evidence to prove a mutual mistake as to a material fact (recovery period). At the time the release was entered into, the plaintiff's physician had told plaintiff that he estimated

plaintiff would be able to return to work in 16 weeks. The same physician had, 2 weeks earlier, indicated to the insurance adjuster in a written report that he estimated approximately 6 months for plaintiff's return to work. This, plaintiff contends, is sufficient to take the issue to a jury. (2) The plaintiff contends that even if there was no mutual mistake, the adjuster had a duty to disclose the contents of the physician's report which indicated the longer recovery period. Plaintiff contends that he was induced to settle for less lost wages by the failure to disclose the report. This, he alleges, constituted "fraud, inequitable, unfair and deceptive conduct" and was grounds to set aside the release. (3) Immediately following the accident, the defendant Burns and his passengers agreed to state that a dog had run into the road causing the accident. They agreed, in an effort to protect defendant Burns' driving privileges, not to mention that Burns had been drinking beer and wine and was traveling at a high rate of speed. Soon after the accident, the insurance adjuster visited Lambert in the hospital and was told the agreed-upon tale by Lambert. In response, he told Lambert that his insured was not liable and that his insurance company could do nothing for him. Burns later told the adjuster what actually happened. The adjuster later disclosed to Lambert that he knew the truth and thereafter agreed to settle the claim. It is plaintiff's contention that having once expressed an opinion as to the legal liability of Burns, the adjuster had a duty to disclose the theory upon which liability might be established and the failure to do so constituted "fraud, inequitable, unfair and deceptive conduct" and was grounds to set aside the release.

■ The rule is clear:

A motion for nonsuit admits the truth of the evidence, and all inferences arising therefrom, of the party against whom the motion is made. It requires that the evidence be interpreted most strongly against the moving party and most favorably to the opposing party. It is only when the court can say that there is no evidence at all to support the plaintiff's claim that the motion can be granted.

*Messina v. Rhodes Co.,* 67 Wn.2d 19, 20, 406 P.2d 312 (1965).

If there was any evidence to support the plaintiff's complaint, the motion to dismiss should have been denied.

Plaintiff contends that the fact about which the parties were mistaken was the period of time that he would be disabled. He alleges that the release was based upon this mistaken belief.

■ Any contract may be set aside where the parties were mutually mistaken as to a material fact. *Beaver v. Estate of Harris,* 67 Wn.2d 621, 409 P.2d 143 (1965).

Each of the parties to the release had a different opinion as to how long Lambert would be disabled. Both opinions were wrong. Lambert was unable to return to work for 15 months, and he has a permanent injury. The parties were mistaken in their estimation of the recovery period. They knew what injury Lambert had sustained, but they did not know how long it would take for him to recover. Neither did his physician. The medical report, dated 6 June 1966, which was submitted to the insurance company by the plaintiff's physician, at the plaintiff's request, contained the following information:

Nature and Extent of Injury. Closed fracture involving the middle third of the left tibia and fibula.

State any physical impairment or disease not the result of this accident. None.

X-Ray. 1. Were X-Ray pictures taken? Yes. 2. By whom taken. Providence Hospital. Address. Everett, Wash. 3. Of what part of body were pictures taken? AP and lateral of the left tibia and fibula. 4. Findings. Transverse fracture, midshaft tibia and fibula with complete displacement and overriding nature.

Nature of Treatment. Admission to the hospital, closed reduction, insertion of pins and application of long leg cast on 20 May 1966.

Further Treatment. 1. Date injured last treated by you. Prior to discharge from hospital. 2. Is further treatment necessary? Yes. Do you anticipate a complete recovery? Yes. If Yes by what date? 6 mos.

Nature and extent of disabilities. Too early to determine at this time.

Exhibit 10.

The plaintiff's testimony regarding the issue is as follows:

Q At the time the release was signed by you, Ken, what was your understanding as to your physical condition? A My understanding was that I would be in a cast for twelve weeks and recuperating for another four weeks before I would be able to return to work. Q Where did you get that idea? A This I got from my doctor. Q Did you see the medical report that your doctor sent to Mr. McKitrick?

MR. MINES: Your Honor, now that becomes irrelevant and immaterial and I move to withdraw the question from —

MR. LUVERA: Let me rephrase the question.

THE COURT: Very well.

Q Before the release was signed, did you ever see the medical report sent from your doctor to Mr. McKitrick? A No, I did not.

At another point, the plaintiff testified as follows:

Q Would you tell us whether or not you signed a medical authorization? A Yes, I did. Q At that time, at the time that Mr. McKitrick came by and you gave him the statement and signed the paper, what is your recollection as to what Dr. White had told you about your condition? A Well naturally I was concerned; when I was in the hospital, I asked the doctor approximately how long I would be in the cast. He indicated to me approximately twelve weeks, two to four weeks to recuperate, be walking on it. Approximately sixteen weeks total.

■ The rule permitting a general release to be set aside for mutual mistake of fact as to the nature and extent of the injuries has been liberally applied. It has not been expanded in this state to include situations in which the parties have been mistaken about future developments of a known injury.[1] The mistake must relate to a past or present fact, material to the contract and not to an opinion regard-

[1]For an annotation reviewing decisions from other jurisdictions see 71 A.L.R.2d 82 (1960).

ing future conditions as a result of present facts. The mere fact that a bad bargain is made will not entitle the releasor to avoid his contract. See the Restatement, Restitution § 11.

Prognosis is not a fact. It is not capable of being determined with certainty. A mistake as to the future consequences of a known injury is not a mistake of fact.

■■ A contract may be set aside where one party was fraudulently induced to enter into the contract. *Getty v. Jett Ross Mines, Inc.,* 23 Wn.2d 45, 159 P.2d 379 (1945). To take the case to the jury there must be evidence of the nine elements required to prove fraud: (1) a representation of an existing fact, (2) its materiality, (3) its falsity, (4) the speaker's knowledge of its falsity or ignorance of its truth, (5) his intent that it should be acted upon by the person to whom it is made, (6) ignorance of its falsity on the part of the person to whom it is made, (7) the latter's reliance on the truth of the representation, (8) his right to rely on it, (9) his consequent damage. See *Swanson v. Solomon,* 50 Wn.2d 825, 314 P.2d 655 (1957).

None of the factual representations in the medical report which could provide a basis for an allegation of fraud are in dispute.

■ There is a question regarding the statement of legal liability. A mistake of law coupled with fraud may be sufficient to avoid a contract. *Schwieger v. Robbins & Co.,* 48 Wn.2d 22, 290 P.2d 984 (1955). At the time that Lambert told the adjuster the agreed-upon tale, the adjuster advised him that Burns was not liable. The adjuster subsequently corrected this statement:

Q Do you recall when you returned home talking with Mr. McKitrick again? A I talked to Mr. McKitrick again, but it was later, three, four weeks later. Q How was this conversation? A This was a phone conversation. Q What was said? A Well, he had stated to me that Mr. Burns had been by his office and stated that he had been drinking and there was no dog on the highway. He felt that the company was liable. And that — felt liable to pay me for the twelve weeks I would be out of work.

Then later on cross-examination Lambert testified:

> Q Didn't you testify before lunch that Mr. McKitrick told you he thought the company was liable? Isn't that your testimony? A That is my testimony, and the way I come to that conclusion is the way he told me that he thought he could help me, he wouldn't be helping me otherwise. At the time, he was doing me a favor.

Although the adjuster had stated to Lambert that his insurance company could do nothing for him, Lambert, based upon subsequent conversations, concluded that the insurance company was liable to him. The question then is whether the offer to settle for 12 weeks' wages when the unrevealed medical report indicated a 6-month recovery period raises a question for the jury on the issue of fraud. We believe not. Lambert testified that he believed he would be disabled for 16 weeks at the time he accepted the settlement. He was examined by his physician on June 13. He was then in a long leg cast and was advised by his physician to remain in bed except to go to the bathroom and have meals at the table and to return in 6 weeks for another examination. He executed the total release on June 17. There is no evidence to support even an inference of reliance upon a 12-week recovery period, even if the recovery period was an existing fact and not a future development.

Lambert based his appeal upon fraud, misrepresentation and mutual mistake of fact. The record does not support these allegations.

Lambert also assigned error to (1) the failure of the trial court to rule that the adjuster was an adverse or hostile witness when called by him; (2) the refusal of the trial court to allow him to show the number of personal injury claims settled out of court by the adjuster; and (3) the refusal of the trial court to allow his medical witness to testify as to the percentage of disability he would suffer in the future.

An adverse witness is a party to the proceeding or a managing agent of a public or private corporation. See

CR 43(f)(1). An employee may be an adverse party, *Heasley v. Riblet Tramway Co.*, 68 Wn.2d 927, 416 P.2d 331 (1966), but only where he serves as an officer, director or managing agent. The adjuster was not shown to come within either of these classifications. CR 43 delineates two separate categories: (1) an unwilling or hostile witness (2) an adverse party or a person in a specific relationship to the adverse party. The rule provides for the interrogation of either by leading questions but only the adverse witness may be contradicted and impeached in all respects. The court correctly ruled that a hostile witness is one who demonstrates it by his demeanor.

The number of claims that the adjuster has settled was offered to show superior knowledge on the part of the adjuster. It was not error to exclude it. The percentage of disability that the plaintiff suffered, if capable of computation, would be relevant only on the question of damages. It had no bearing on whether the release was a valid contract.

We find no error in the record. The judgment is affirmed.

JAMES, C. J., and UTTER, J., concur.

---

Petition for rehearing denied April 21, 1970.