Richard W. SHEAR, Appellant,

v.

The NATIONAL RIFLE ASSOCIATION OF AMERICA, a New York Corporation, et al.

No. 78–1108.

United States Court of Appeals, District of Columbia Circuit.

Argued Dec. 1, 1978.

Decided Aug. 15, 1979.

As Amended Aug. 22, 1979.

---

Richard W. Shear, pro se.

Joseph A. Artabane, Washington, D. C., with whom Stephen N. Shulman and Valerie G. Schulte, Washington, D. C., were on the brief, for appellees.

Before TAMM and MacKINNON, Circuit Judges, and JOHN H. PRATT,* United States District Court Judge for the District of Columbia.

Opinion for the Court filed by Circuit Judge MacKINNON.

MacKINNON, Circuit Judge:

Plaintiff Shear is a real estate agent who arranged to sell the Washington headquarters building of the National Rifle Association (NRA). He was to be paid a commission when the sale was "fully consummated."[1] When the sale fell through and Shear was not paid his commission, he sued the NRA seeking damages for: (1) breach of contract; (2) fraud and misrepresentation; and (3) rescission.[2] Without opinion, the District Court dismissed Shear's complaint for failure to state a claim upon which relief can be granted.[3] This appeal followed. We reverse and remand for a trial on the merits.

## I

Since this is an appeal from a dismissal for failure to state a claim under Rule 12(b)(6), "we may look only at the pleadings, with all of 'the well-pleaded material facts alleged in the complaint . . . taken as admitted,' *Gumer v. Shearson, Hammill & Co.*, 516 F.2d 283, 286 (2d Cir. 1974) . . . ." *George C. Frey Ready-Mixed Concrete, Inc. v. Pine Hill Concrete Mix Corp.*, 554 F.2d 551, 553 (2d Cir. 1977). "The complaint must be construed liberally, with all factual allegations deemed to be true and with doubts to be resolved in favor of the pleader." *Parr v. Great Lakes Express Co.*, 484 F.2d 767, 769–770 (7th Cir. 1973).[4] The following statement of facts, therefore, is derived from Shear's complaint.[5]

The NRA decided to move its national headquarters from Washington, D.C. to Colorado Springs. Land was purchased and a ground breaking ceremony was held in November of 1976.[6] Also in November, 1976, the NRA, through its Treasurer (Binswanger), instructed Shear to solicit purchase offers for the old headquarters building located in Washington, D.C.[7] Shear's efforts were successful: he found two prospective purchasers.[8]

On April 1, 1977, the NRA's Management Committee established a sealed bid procedure for choosing a purchaser of the Washington headquarters building. In addition, the Committee decided that "the winning bid would . . . be unanimously recommended by the Management Committee to the Board of Directors at its meeting on May 23, 1977."[9] The Management Committee's recommendation to the Board was very important because "Board approval [was] necessary to consummate a sale of the property."[10]

---

* Sitting by designation pursuant to 28 U.S.C. § 292(a).

1. Agreement between NRA and Shear, May 6, 1977. JA 11.

2. Count IV of plaintiff's complaint, JA 9 alleged that *defendant's actions harmed plaintiff's professional reputation.* Count V alleged that Shear was entitled to recover in quantum meruit. Plaintiff apparently does not make these arguments on appeal.

3. JA 69. Though the court's order does not state the grounds for dismissal, defendant's motion was pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

4. *See Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957), in which the Supreme Court stated that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief."

5. Much of the NRA's oral presentation was spent informing us of the "actual facts." "Actual facts" are to be determined after a trial. At this stage, our decision must assume that the allegations in the complaint are true.

6. Plaintiff's complaint, ¶ 7, JA 2.

7. *Id.* ¶ 9, JA 3.

8. *Id.* ¶ 11, JA 3.

9. *Id.* ¶ 12, JA 4.

10. *Id.* ¶ 9, JA 3.

On April 29, 1977, the Management Committee unanimously selected the highest bid, which had been procured by Shear. Subsequently, the winning bidder and the President of the NRA signed a purchase contract, "subject to the approval of the Board of Directors of the NRA." [11] "The NRA, by the terms of its contract with [the winning bidder], and otherwise, was obligated to present the . . . contract to its Board of Directors for approval." [12]

On May 6, 1977, Shear and the NRA (by its executive vice president) entered into a brokerage commission agreement in which the NRA agreed to pay a $150,000 commission (in lieu of 4% of the sales price) "contingent on settlement." [13]

Later in May, 1977, at the NRA's Annual Meeting, dissident members and officers were successful in a takeover of the NRA.[14] The new controlling group, which was opposed to the proposed move to Colorado Springs, enacted "a by-law change prohibiting removal of NRA headquarters from its Washington, D.C., site. . . ." [15] In addition, the by-laws were changed to "strip the Board of Directors of its power to approve the sale of NRA real property. . . ." [16]

After these by-law changes were made, the proposed contract was presented to the Board of Directors for a "vote" notwithstanding that the Board had no authority to approve the contract. The Management Committee voted to not recommend approval of the proposed contract,[17] and the Board did not approve it. Since Shear's contractual right to a commission is "contingent on settlement," the NRA refused to pay him and he was not paid.

## II

Shear's primary claim is breach of contract. He asserts that under the contract he has a right to the $150,000 commission. The District Court held, however, that since the sale of the Washington headquarters building was never consummated, a "condition precedent" was never met, and Shear has no right to the commission.[18] Shear concedes that the contract he signed contains a condition—settlement—that was not met. Shear argues that his failure to meet the condition should be excused because the NRA *prevented* it from occurring. We hold that Shear's complaint alleges facts sufficient to establish a claim that the NRA engaged in prevention, and therefore that the District Court erred when it dismissed the complaint before trial.

## A

Generally, one is not bound by a conditional contract until the condition occurs. The doctrine of prevention is an ex-

---

11. *Id.* ¶ 14, JA 4.

12. *Id.*

13. Agreement between NRA and Shear, May 6, 1977, JA 11 (this agreement is attached to plaintiff's complaint).

14. Plaintiff's memorandum in opposition to Defendant's motion to dismiss, JA 27; plaintiff's complaint, ¶ 25, JA 7. Plaintiff alleges that "Binswanger, Treasurer of the NRA, and other NRA officials, had knowledge, during the course of their dealings with Plaintiff, that the NRA intended to prevent sale of the property. Despite this knowledge, these officials continued to represent that the contract of sale was to be recommended to the Board for approval, and failed to inform Plaintiff and AAAS [the prospective purchaser] that the NRA intended to prevent a sale. Plaintiff and AAAS were induced by these misrepresentations and omissions of NRA officers concerning material facts, on which Plaintiff and AAAS relied, to enter into contracts which NRA did not intend to honor. Had Plaintiff been informed of events taking place, Plaintiff would not have entered into the Agreement of May 6, 1977, to make his commission subject to Board approval and contingent upon settlement. Plaintiff would thus have been entitled to the commission for his work in producing a ready, willing and able purchaser." Plaintiff's complaint, ¶ 18, JA 6.

15. Plaintiff's complaint, ¶ 16(b), JA 5.

16. *Id.* ¶ 16(c), JA 5.

17. *Id.* ¶ 16(a), (f), JA 5.

18. Tr., Dec. 16, 1977, JA 67.

ception to this general rule.[19] This doctrine provides that when a promisor wrongfully prevents a condition from occurring that condition is excused.

The prevention doctrine has been stated in various ways. According to Corbin:

> One who unjustly prevents the performance or the happening of a condition of his own promissory duty thereby eliminates it as such a condition. He will not be permitted to take advantage of his own wrong, and to escape from liability for not rendering his promised performance by preventing the happening of the condition on which it was promised.

3A *Corbin on Contracts* § 767 at 540 (1961). Williston states: "It is a principle of fundamental justice that if a promisor is himself the cause of the failure of performance, either of an obligation due him or of a condition upon which his own liability depends, he cannot take advantage of the failure." 5 *Williston on Contracts* § 677 at 224 (W. Jaeger, ed., 3d ed. 1961). The prevention doctrine is incorporated in the 1932 *Restatement of Contracts*[20] and it is retained in the more recent draft of the *Restatement* which provides that "[w]here a party's breach by non-performance substantially contributes to the non-occurrence of a condition of one of his duties, the non-occurrence is excused." *Restatement (Second) of Contracts* § 269 (Tent. Draft No. 8, 1973).

As Williston notes, cases illustrating the prevention principle "are legion."[21] One example, quoted by Williston, is *Gulf Oil Corp. v. American Louisiana Pipe Line Co.,* 282 F.2d 401, 404 (6th Cir. 1960), in which the court stated: "Where liability under a contract depends upon a condition precedent one cannot avoid his liability by making the performance of the condition prece-

dent impossible, or by preventing it." *Accord: Amies v. Wesnofske,* 255 N.Y. 156, 174 N.E. 436, 438 (1931), *Omaha Public Power District v. Employers Fire Insurance Co.,* 327 F.2d 912, 916 (8th Cir. 1964), *Foster v. Colorado Radio Corp.,* 381 F.2d 222, 224 (10th Cir. 1967), *Spanos v. Skouras Theatres Corp.,* 364 F.2d 161, 169 (2d Cir.), *cert. denied* 385 U.S. 987, 87 S.Ct. 597, 17 L.Ed.2d 448 (1966). Prevention, therefore, can negate a requirement to satisfy a condition precedent.

**B**

The NRA maintains, however, that plaintiff's prevention argument is undercut by *Dixon v. Bernstein,* 86 U.S.App.D.C. 336, 182 F.2d 104 (D.C.Cir. 1950). In *Dixon,* a real estate broker agreed that the seller would have "no liability [for the commission] if the sale is not settled."[22] The sale was not settled, and the broker sued for his commission. He alleged that the seller had an obligation to act in good faith; that the seller withdrew from the deal in bad faith; and therefore that he (the broker) was entitled to a commission despite the contract. The court rejected this argument, holding that good faith was irrelevant. Judge Bazelon wrote:

> We hold . . . that the issue of good faith under the sales contract is irrelevant here. . . . Since no sale took place, there was no liability for a commission.
>
> . . . Within such a professionalized context, it seems reasonable to suppose that if the parties had intended to make their contract dependent upon conditions other than consummation of sale, they would have done so.[23]

---

**19.** The prevention issue most frequently arises in cases involving real estate brokers. According to *Williston on Contracts:* "Any number of cases involving this principle [prevention] may be found in connection with contracts where brokers are seeking to recover their commissions claiming that the owner of the land has prevented the sale by a refusal to pursue the contract with a bona fide purchaser." 5 *Williston on Contracts* § 677 at 226–27 (W. Jaeger, ed., 3d ed. 1961).

**20.** *Restatement of Contracts* § 295 (1932).

**21.** 5 *Williston on Contracts* § 677 at 225.

**22.** 182 F.2d at 104.

**23.** *Id.* at 105.

In short, the broker in *Dixon* assumed the risk that the seller would frustrate the sale, and he had no right to complain about prevention when that risk materialized.

■ *Dixon* is not inconsistent with the prevention doctrine. On the contrary, it is an example of a well recognized exception: the prevention doctrine does not apply when the contract, in effect, authorizes prevention. This exception has been recognized by the commentators. Williston wrote: "An exception to this principle must be made where the hindrance is due to some action of the promisor which under the terms of the contract . . . was permitted . . . ." 5 *Williston on Contracts* § 377A at 235. Similarly, Corbin stated: "The phrase 'unjustly preventing' was purposely used in [the definition of prevention] . . . for the reason that there are some cases in which some sort of prevention or interference is contemplated by the parties as quite proper and within the privileges of the promisor." 3A *Corbin on Contracts* § 767 at 545.

Actually, it is somewhat inaccurate to call the assumption of risk rule discussed above an "exception" to the prevention doctrine. The *Restatement* defines prevention as a "breach by non-performance." Corbin defines it as "unjust." [24] The gist of these definitions is that prevention is a breach of contract. A corollary of this definition is that there is no prevention when the contract authorizes a party to prevent a condition from occurring. The issue to be decided in this case, therefore, is whether, as in *Dixon,* the plaintiff/broker assumed the risk of the NRA's prevention. If Shear did not assume the risk, then the NRA's prevention excuses the condition of settlement, and Shear is entitled to his commission.

### C

■ Assuming that the facts alleged in the complaint are true we hold that Shear did not assume the risk of the prevention

that occurred, and that the NRA's conduct amounted to a breach of its promissory obligation.[25] Shear's complaint alleges that the NRA failed to honor two promises. First, the Management Committee was required to recommend that the Board adopt the sale contract procured by Shear. Second, the contract was to be submitted to the Board for approval. In light of these two promises, the risk assumed by Shear was that the Board, *with authority to consider the contract,* would withhold approval despite the unanimous recommendation of the Management Committee.

The complaint alleges that the NRA did not honor either of its promises. It asserts that the Management Committee failed to recommend approval of the contract, and that the contract was not submitted to the Board until the Board was stripped of its authority to approve the contract. Shear did not assume the risk that the Management Committee would refuse to recommend the contract, or that the Board would be deprived by a subsequently enacted by-law of authority to approve the contract. Since these risks were not assumed by Shear, the NRA's alleged conduct was unauthorized prevention.

The situation here is distinguishable from that involved in *Dixon.* In *Dixon,* the buyer reserved the right to cancel the contract "for any reason whatsoever. . . ."[26] After the buyer cancelled, the court held that the broker assumed the risk of such a cancellation. Here, on the other hand, it is alleged that the seller frustrated the sale in a way not contemplated or authorized by the contract. Thus, while *Dixon* fell within the exception to the prevention doctrine, the facts alleged here constitute a classic case of prevention.

### D

The NRA makes three additional arguments against Shear's prevention claim.

---

**24.** *See* text at 6–7, *supra.*

**25.** Of course, our holding assumes—as we must at this stage—that plaintiff's allegations are true. We do not prejudge plaintiff's ability

to prove or defendant's ability to disprove these allegations at trial.

**26.** 182 F.2d at 104.

First, it contends that "the NRA cannot be charged with preventing the settlement of a sale to which it never agreed."[27] This argument is specious. Shear's prevention claim is that the NRA and its Management Committee improperly prevented the Board of Directors from approving the sale of the Washington property to one of Shear's prospective purchasers. While the NRA's Board never agreed to the sale, Shear's argument is that the Board was wrongly prevented from doing so.

The NRA's second argument is that "nothing but abject speculation could show that 'the condition [settlement] would have occurred'. . . ."[28] This argument assumes that a prerequisite for a prevention claim is that "the condition would have occurred . . . except for such prevention or hindrance. . . ."[29] Since Shear's claim depends on speculation, the argument goes, Shear has failed to state a claim on which relief can be granted.

 This argument is untenable for three reasons. First, almost all cases in which prevention is alleged will involve speculation as to what would have happened had the defendant's conduct not taken place. If the NRA's argument were accepted, then it would be virtually impossible to state a claim for prevention. Second, the plaintiff's complaint alleges that the NRA prevented settlement.[30] On a motion to dismiss, the truth of this allegation must be assumed. Only at trial should plaintiff's ability to prove his case be tested.[31] Finally, the premise of the NRA's argument—that under the *Restatement* rule the plaintiff must show that "but for" defendant's conduct the contract would have been approved—is no longer valid. The *Restatement* has abandoned the old "but for" test and replaced it with a requirement that defendant's prevention "substantially contribute[d]" to the non-occurrence of the condition. *See Restatement (Second) of Contracts* § 269 quoted *supra* at 7. Comment b of the *Restatement* draft now explains:

> *Substantially contribute.* Although it is implicit in the rule that the condition has not occurred, it is not necessary to show that it would have occurred but for the lack of cooperation. It is only required that the breach have substantially contributed to the non-occurrence. Nevertheless, if it can be shown that the condition would not have occurred regardless of the lack of cooperation, the failure of performance did not substantially contribute to its non-occurrence and the rule does not apply. The burden of showing this is properly thrown on the party in breach.[32]

Therefore, the defendant's assertion that Shear's complaint rests on "abject specula-

---

**27.** NRA Br. 8.

**28.** *Id., quoting Restatement of Contracts* § 295 (1932).

**29.** *Restatement of Contracts* § 295 (1932). The NRA specifically cited the Restatement provision.

**30.** "By failing *to properly submit the AAAS* [Shear's purchaser] contract to its Board of Directors, as the NRA was obligated to Plaintiff and AAAS to do, the NRA intentionally and wrongfully acted to prevent settlement on the contract with AAAS and to prevent payment to Plaintiff of the Commission to which he was entitled." JA 5–6.

**31.** *See* text and footnote at n.4, *supra.* Of course, if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief," *Conley v. Gibson,* 355 U.S. at 45–46, 78 S.Ct.

99, 2 L.Ed.2d 80 then we would be obliged to grant defendant's motion to dismiss. But it is not hard to imagine Shear being able to prove by the preponderance of evidence that but for the NRA's wrongful action, the Board would have approved the sale. For example, Shear could present testimony that the Board routinely approved contracts recommended by the Management Committee, or testimony from then Board members that they would have approved the contract if it had been recommended.

**32.** The drafters of the *Restatement* cite the following cases as authority for their rule: *Foreman State Trust & Savings Bank v. Tauber,* 348 Ill. 280, 180 N.E. 827, 830 (1932); *Vanadium Corp. v. Fidelity & Deposit Co.,* 159 F.2d 105, 109–110 (2d Cir. 1947); *E. I. Dupont de Nemours Powder Co. v. Schlottman,* 218 F. 353 (2d Cir. 1914).

tion" is no basis for dismissing the complaint. Shear is entitled to try to prove his case at trial.

 Finally, the NRA contends that it never hired Shear because the officers who purported to hire him lacked the authority to do so. The NRA cites the New York Not-For-Profit Corporation Law § 509, which provides that:

No purchase of real property shall be made by a corporation and no corporation shall sell, mortgage or lease its real property, unless authorized by the vote of two-thirds of the entire board, provided that if there are twenty-one or more directors, the vote of a majority of the entire board shall be sufficient.[33]

Since this statute requires Board approval before property can be sold, the NRA argues that its officers had no authority to hire Shear, or to promise him that the Management Committee would submit the sales contract to the Board with an unanimous recommendation that the Board give its approval. And since the promises made to Shear were claimed to be without authority, Shear can not hold the NRA to them.

We find this argument untenable. First, the NRA misreads the New York statute. While the statute says that a not-for-profit corporation cannot sell its property without Board approval, it does not prohibit either corporate officers or a management committee from contracting with a broker to procure a purchaser. Thus neither the NRA officers nor the Management Committee exceeded their authority when according to the complaint they hired Shear and made certain promises to him. Second, even if the statute required Board approval before a broker could be hired, section 712 provides that "executive" and "other standing committees" may be designated, and that such committees may "have all the authority of the board."[34] Shear alleges that he dealt with just such a committee.[35] Finally, even if the hiring of Shear and the promises made to him were not grounded in actual authority, the NRA may still be liable on those promises. Under agency principles, "[w]here a corporation clothes an officer or agent with apparent authority, which is reasonably relied upon [in] good faith by a third person, the corporation . . . [is] estopped from denying such authority." H. Henn, *Law of Corporations* § 226 at 445 (1970). Here, the NRA held a ground breaking ceremony, and completed a purchaser selection procedure. In addition, Shear was allegedly in almost constant contact with NRA officials and Management Committee members, who were well aware of his efforts to sell the Washington property. In light of these allegations, the plaintiff is at least entitled to a chance to prove at trial that the promises made to him were within the officers' and Management Committee's apparent authority. *See Capital Food Mart, Inc. v. Sam Blanken & Co.*, 267 A.2d 371, 373 (D.C.1970); *Matter of Drive-In Development Corp.*, 371 F.2d 215, 218 (7th Cir. 1966), *cert. denied*, 387 U.S. 909, 87 S.Ct. 1691, 18 L.Ed.2d 626 (1967); *Doric Co. v. Leo Jay Rosen Associates*, 303 F.2d 817, 820 (5th Cir. 1962); *Kenneally v.*

---

**33.** N.Y. Not-For-Profit Corp. Law § 509 (McKinney). The NRA is a New York Not-For-Profit corporation.

**34.** N.Y. Not-For-Profit Corp. Law § 712(a).

(a) If the certificate of incorporation or the by-laws so provide, the board, by resolution adopted by a majority of the entire board, may designate from among its members an executive committee and other standing committees, each consisting of three or more directors, and each of which, to the extent provided in the resolution or in the certificate of incorporation or by-laws, shall have *all the authority of the board, except that no such committee shall have authority as to the following matters :*

(1) The submission to members of any action requiring members' approval under this chapter.

(2) The filling of vacancies in the board of directors or in any committee.

(3) The fixing of compensation of the directors for serving on the board or on any committee.

(4) The amendment or repeal of the by-laws or the adoption of new by-laws.

(5) The amendment or repeal of any resolution of the board which by its terms shall not be so amendable or repealable.

**35.** Plaintiff's complaint, ¶ 9, 12, JA 3–4.

*First Nat. Bank of Anoka*, 400 F.2d 838 (8th Cir. 1968), *cert. denied*, 393 U.S. 1063, 89 S.Ct. 716, 21 L.Ed.2d 706 (1969); 2 *Fletcher Cyclopedia Corporations* § 449 at 344 (1969).

### E

In summary, we hold on the pleadings that Shear has adequately stated a breach of contract claim based on the doctrine of prevention. We therefore hold that plaintiff is entitled to a trial on his claim and his prevention rejoinder. We emphasize that our holding is only that the plaintiff's complaint is adequate to withstand defendant's motion to dismiss for failure to state a claim upon which relief can be granted. We express no opinion or prediction as to the plaintiff's ability to prove his case at trial or the defendant's ability to refute that case.

### III

Plaintiff's second count asserts that he was fraudulently induced to sign the May 6, 1977, agreement that made his right to a commission contingent on settlement. He asserts that had he known of the impending coup—as Binswanger did—he would not have signed.[36] Though the District Court did not address this issue specifically, it apparently held that plaintiff's complaint failed to state a claim upon which relief can be granted.[37] We disagree.

A fraud complaint must allege four elements:

**36.** Plaintiff's complaint, ¶ 25–26, JA 7–8.

**37.** The complaint was dismissed after a hearing, but the contract claim was the only issue discussed.

**38.** Plaintiff's complaint, ¶ 18, 25, JA 6.

**39.** Generally, a cause of action for fraud will not lie for misrepresentations as to future promises or facts. *E. g. Carroll v. First National Bank of Lincolnwood*, 413 F.2d 353 (7th Cir. 1969), *cert. denied*, 396 U.S. 1003, 90 S.Ct. 552, 24 L.Ed.2d 494 (1970); *Classic Bowl, Inc. v. AMF Pinspotters, Inc.*, 403 F.2d 463 (7th Cir. 1968) (Illinois rule). The NRA has not argued that this is a basis for dismissing Shear's fraud complaint. Moreover, an exception to this rule is made for cases in which, at the time the promise was made, the promisor had "an intent

(1) a deliberate misstatement of fact, (2) made with the intent to deceive another person, (3) reasonably relied upon by the deceived person, (4) which reliance proximately and directly results in damage to that person.

*Day v. Sidley & Austin*, 394 F.Supp. 986, 990 (D.D.C.1975). *Accord: Wu v. Keeney*, 384 F.Supp. 1161 (D.D.C.1974); *Sankin v. 5410 Connecticut Ave. Corp.*, 281 F.Supp. 524 (D.D.C.1968), *aff'd* 133 U.S.App.D.C. 361, 410 F.2d 160 (D.C.Cir. 1969), *cert. denied*, 396 U.S. 1041, 90 S.Ct. 681, 24 L.Ed.2d 685 (1970). Plaintiff's complaint alleges each element. (1) Shear agreed to the May 6 contract after being assured that the Management Committee would support the proposed transaction. If Binswanger was aware of the impending coup, as alleged [38], and made that assurance anyway, then he and the NRA are guilty of a deliberate misstatement.[39] (2) One can infer that this misstatement was made with an intent to deceive Shear in order to enable the NRA to recant its plan to sell its headquarters without incurring any liability to the broker who had arranged the sale. (3) Shear had no reason to doubt the word of Binswanger or the other officers of the NRA that he dealt with. (4) The misrepresentation induced Shear to enter a contract that made his right to a commission contingent on a condition that was not met, hence Shear was not paid.

not to perform the promised act." *Fredonia Broadcasting Corp., Inc. v. RCA Corp.*, 481 F.2d 781, 796 (5th Cir. 1973). *Accord: Bissett v. Ply-Gem Industries*, 533 F.2d 142, 145 (5th Cir. 1976); *Freeman v. Continental Gun Co.*, 381 F.2d 459, 468 (5th Cir. 1967); *U. S. v. 1,557.28 Acres of Land in Osage County, Kansas*, 486 F.2d 445, 448 (10th Cir. 1973); *Doody v. John Sexton & Co.*, 411 F.2d 1119, 1121 (1st Cir. 1969); *Rochester Civic Theatre, Inc. v. Ramsay*, 368 F.2d 748, 754 (8th Cir. 1966); *Fruit Industries Research Foundation v. National Cash Register Co.*, 406 F.2d 546, 549–550 (9th Cir. 1969). Plaintiff's complaint alleges that during the negotiating certain NRA officers intended to prevent the sale of the property. *See* n.14, *supra.* This allegation falls within the exception.

The NRA has two arguments in response. First, it points out that "plaintiff does not and cannot assert that [the NRA] represented that the proposal of one of [Shear's] bidders would be accepted."[40] This is true, but it is not responsive to plaintiff's claim. Shear's contention is that (1) Binswanger lied when he promised that the Management Committee would recommend the contract to the Board, and (2) this misrepresentation induced him to sign the May 6, contract.

Second, the NRA argues that "[w]hatever misrepresentations by individual employees of defendant might be claimed by plaintiff," they were unauthorized and therefore the NRA is not liable for them.[41] This argument is based on the provision of the New York Not-For-Profit Corporation Law that was discussed *supra*.[42] We reject this argument for the reasons already mentioned, and in addition because the misrepresentations allegedly involved here concerned whether the Management Committee would recommend Board approval. Shear should be allowed to prove at trial that members of the Committee had authority to make such a promise.

Since plaintiff's complaint alleges a proper cause of action for fraud, we hold that he is entitled to a trial on the fraud count as well.

### IV

█ Count III of plaintiff's complaint alleges that he is entitled to rescind the May 6, 1977 agreement because it "was entered into pursuant to mutual mistake on the part of the parties . . . as to a material fact."[43] The supposed mistake of fact was the parties' belief that the Management Committee would unanimously recommend to the Board that it (the Board)

should approve the contract procured by Shear.[44]

Of course, "where both parties assume a certain state of facts to exist, and contract on the faith of that assumption, they can be relieved from their obligations if the assumption is erroneous." *Leasco Corp. v. Taussig*, 473 F.2d 777, 781 (2d Cir. 1972). *Accord: Restatement (Second) of Contracts* § 294(1) (Tent. draft No. 10, 1975) and J. Calamari & J. Perillo, *Contracts* 299–300 (2d ed. 1977). But in this case, the alleged "mistake" was the parties' belief that the Management Committee would recommend the contracts to the Board in the future. The mistake doctrine does not apply to predictions or promises of future conduct. The drafters of the *Restatement* wrote:

> The erroneous belief must relate to the facts . . . as they exist at the time of the making of the contract. A party's prediction or judgment as to events to occur in the future, even if erroneous, is not a "mistake" as that word is defined here.

*Restatement (Second) of Contracts* § 293, comment a. *Accord: United States v. Garland*, 122 F.2d 118, 121–22 (4th Cir.), *cert. denied*, 314 U.S. 685, 62 S.Ct. 189, 86 L.Ed. 548 (1941); *Lambert v. State Farm Mutual Automobile Ins. Co.*, 2 Wash.App. 136, 467 P.2d 214, 218 (1970); and *Artman v. O'Brien*, 398 S.W.2d 24, 27 (Mo.App.1965). Plaintiff's complaint, therefore, does not state a cause of action for rescission because of a mutual mistake of fact. The District Court's dismissal of this count of the complaint was proper.

### V

We therefore hold that both Count I (Breach of Contract—Prevention) and Count II (Fraud and Misrepresentation)

---

40. NRA Br. 11.

41. *Id.* at 11–12.

42. *See* text at n.33–35

43. Plaintiff's complaint, ¶ 28, JA 8.

44. Plaintiff's memorandum in opposition to defendants motion to dismiss, JA 35. Plaintiff alleges that the officers who signed the May 6, 1977, agreement for the NRA were unaware of the impending coup. Plaintiff's complaint ¶ 19, JA 6. This allegation is not necessarily inconsistent with the fraud count, which is based on Binswanger's knowledge about the impending coup. *See* n.14, *supra*.

state a claim upon which relief can be granted, and should not have been dismissed. We reverse the District Court's decision with respect to these two counts and remand for further proceedings.[45] We affirm the District Court's dismissal of Count III (rescission).

*Judgment Accordingly.*

---

**45.** We repeat that we express no opinion as to whether plaintiff will be able to prove his case at trial.