NATURAL RESOURCES DEFENSE
COUNCIL, INC., et al., Plaintiffs,

v.

**Robert F. BURFORD, et al.,
Defendants.**

Civ. A. No. 82-2763.

United States District Court,
District of Columbia.

Nov. 1, 1988.

Eldon V.C. Greenberg and L. Thomas Galloway, Washington, D.C., for Natural Resources Defense Council, Inc., Sierra Club, Environmental Policy Institute, Northern Plains Resource Council, Western Organization of Resource Councils and Powder River Basin Resource Council.

Norman L. Dean Jr., National Wildlife Federation, Washington, D.C., for National Wildlife Federation.

Hope M. Babcock, National Audubon Soc., Washington, D.C., for National Audubon Soc.

Alfred T. Ghiorzi, Rebecca A. Donnellan, Dept. of Justice, Washington, D.C., for Robert F. Burford, Bureau of Land Management, James Watt and U.S. Dept. of Interior.

John A. Macleod, Timothy M. Biddle, Thomas C. Means, Washington, D.C., for National Coal Ass'n, American Mining Congress.

James R. Bird, Warner W. Gardner, I. Michael Greenberger, Washington, D.C., for Peabody Coal Co.

E. Edward Bruce, Eugene D. Gulland, Washington, D.C., for Shell Oil Co.

Gerry Levenberg, Allan W. Anderson, Jr., Washington, D.C., for Texaco, Inc.

Steven P. Quarles, Crowell & Moring, Washington, D.C., for the State of Wyo.

## MEMORANDUM

BRYANT, Senior District Judge.

This action is before the court on cross-motions for summary judgment. The plaintiffs, environmental groups and organizations of residents of western states, challenge rules promulgated by defendant Department of the Interior ("Interior") in July 1982 and February 1986. The rules amend a number of regulations promulgated in 1979 to govern the national program for the management, including leasing and mining, of federally-owned coal.

The plaintiffs claim that various provisions of these rules violate the substantive requirements of one or more of the federal statutes governing coal management and land use planning.[1] The federal defendants, joined by the State of Wyoming and intervenors from the coal industry, maintain that both the 1982 and 1986 actions are consonant with the governing statutes. They counter that plaintiffs lack standing to raise these claims and that one of plaintiffs' challenges is timebarred. Upon consideration of the submissions of the parties and for the reasons stated below, defendants' motion for summary judgment is granted on the grounds that plaintiffs have failed to show they have standing to sue.

## I. BACKGROUND

This suit is a challenge to coal mining regulations promulgated by the Department of Interior in 1982 and 1986, which plaintiff maintains are inconsistent with the substantive statutes governing mining and land use enacted by Congress in the mid-to late 1970's. The general land use statute at issue is the Federal Land Policy and Management Act ("FLPMA"), 43 U.S.C. §§ 1701–1782, which require that all federal lands be inventoried and their uses coordinated through "land use plans." *Id.* at § 1712(a). In developing and revising these land use plans, the Secretary of Interior must consider the environmental, economic, social and cultural values that would be served or disserved by various uses, according to criteria set out at 43 U.S.C. § 1712(c). Opportunity for public comment and participation in formulation of plans is required. *Id.* at § 1712(f). Two statutes address mining in particular: The Federal Coal Leasing Amendments Act ("FCLAA"), 30 U.S.C. §§ 201–209, which amended the earlier Mineral Lands Leasing Act of 1920 ("MLA"); and the Surface Mining Control and Reclamation Act ("SMCRA"), 30 U.S.C. §§ 1201–1328. FCLAA requires, in relevant part, that all coal lands be leased by competitive bidding at fair market value, 30 U.S.C. § 201(a)(1); that the lessee submit "an operation and reclamation plan" within three years after obtaining a lease, 30 U.S.C. § 207(c); and that leases are subject to a "diligent development" condition that requires leased land to be producing coal in commercial quantities within ten years. 30 U.S.C. § 207(b). SMCRA sets environmental protection standards for coal mining on all land, public and private, 30 U.S.C. §§ 1251–1279. It also imposes two important obligations upon the federal government: it requires that the federal government determine which of its lands are unsuitable for surface coal mining, 30 U.S.C. § 1272(b); and, where the government owns the mineral rights located beneath privately owned surface lands, that mineral rights not be leased without the surface owner's consent. 30 U.S.C. § 1304.

In light of these three landmark statutes and the decision in *Natural Resources Defense Council v. Hughes,* 437 F.Supp. 981 (D.D.C.1977), *modified,* 454 F.Supp. 148 (D.D.C.1978), which enjoined application of an earlier regulatory program as having relied on inadequate environmental assessments, Interior adopted a new coal management program in 1979. 44 Fed. Reg. 42584. Plaintiffs characterize this 1979 program as one designed "to achieve a balance among all interests affected by the leasing of the Nation's coal resources— coal companies, land owners, states, the environmental community and the consuming public" which "sought to key leasing decisions to national energy needs; ensure that such decisions were integrated with comprehensive land use planning efforts; review all lands, including those already leased, for their suitability for leasing dur-

---

1. Plaintiffs' complaint originally alleged that the environmental assessment prepared by Interior as part of the process of promulgating the 1982 rules was insufficient to meet the requirements for an environmental impact statement under the National Environmental Policy Act, 42 U.S.C. §§ 4321–4347. Plaintiffs also alleged that adoption of the 1982 rules was arbitrary and capricious and in violation of the Administrative Procedure Act, 5 U.S.C. § 553. By joint motion filed April 22, 1986, the parties acknowledged that these claims were rendered moot by the Final Supplemental Environmental Impact Statement completed in October 1985, and by the decisions embodied in the Secretarial Issue Document issued in February 1986.

ing land use planning; spur leaseholders to production; provide for public input at each critical stage of the decisionmaking process; and ensure maximum protection of surface owners." Plaintiffs' Memorandum in Support of Their Motion for Summary Judgment at 9-10.

In 1981, with the advent of a new administration, Interior began a review of federal coal leasing policy which culminated in a number of alterations to the federal coal leasing scheme. Among these changes were the shift from a coal leasing program based on the market demand for coal production to one in which industry demand for coal reserves was the basic criterion for setting coal leasing levels. The 1982 regulations also provide for a "call for coal resource information" by which Interior expressly solicits information on lands with coal resource development potential from industry, state and local governments and the general public. 43 C.F.R. § 3420.1-2. Plaintiffs' suit challenges the following specific aspects of the 1982 regulations as inconsistent with substantive statutory provisions governing the land use planning and coal leasing process:

(1) The 1982 regulations delete the specific standards set out in the 1979 regulations for reviewing the adequacy of pre-FLPMA and FLCAA land use plans known as "Management Framework Plans" ("MFPs"). *Compare* 43 C.F.R. § 3420.1-5(c) and (d) (1979) *with* 43 C.F.R. § 3420.1-4 (1982). The 1979 regulations provided that the MFPs could be used as basis for leasing decisions until December 31, 1984 if they met the standards set out in the regulations, but after that date, leasing decisions were to be based upon comprehensive "resource management plans" ("RMPs") prepared by the Bureau of Land Management. 43 C.F.R. § 3420.1-5(e).

(2) The 1982 regulations fail to integrate into the land use planning stage of the leasing process an analysis of unsuitability (for all or certain types of surface coal mining operations) based upon the reclaimability of the lands in question following mining. This reclaimability criteria is ap-

plied during the later mining permit application process. 30 C.F.R. § 786.19(b).

(3) The 1979 regulations provided numerous opportunities for public input into the establishment of regional coal needs and production targets. *See* 43 C.F.R. § 3420.3-2. These provisions were deleted in the 1982 regulations, which rely instead upon public input to the regional coal teams during the stage when regional leasing levels are being established. 47 Fed. Reg. 33119. Plaintiffs allege that this alteration renders the regulations inconsistent with the FLPMA provision which requires that the general public have adequate opportunity to comment on the plans and programs related to the use of the public lands. 43 U.S.C. § 1712(f).

(4) Section 7 of FCLAA, 30 U.S.C. § 207(a), provides that "[a]ny lease which is not producing in commercial quantities at the end of ten years shall be terminated." The 1982 regulations state that this ten year "diligent development period" shall begin on "the effective date of the first lease readjustment after August 4, 1976, for federal leases issued prior to August 4, 1976." 30 C.F.R. § 211.2(a)(14)(i)(B); 47 Fed.Reg. 33181. Plaintiffs maintain that this regulation is contrary to FCLAA's directive in that it allows for periods of greater than 10 years during which a lease may not be producing in commercial quantities.

(5) Section 7 of FCLAA, 30 U.S.C. § 207(c), also requires that a successful applicant for a tract submit an operation and reclamation plan within three years after the lease is issued. A 1982 regulation challenged by plaintiffs extends this three year period by "the period of time in which the District Mining Supervisor determines that operations under the federal coal lease or [Logical Mining Unit] are interrupted by strikes, the elements or casualties not attributable to the operator/lessee." 30 C.F.R. § 211.22(a)(1); 47 Fed. Reg. 33187.

(6) The 1982 regulations altered the provisions dealing with surface owner consent to surface mining. The 1982 regulations provide that in determining whether an

owner is qualified to grant or withhold its consent, the Department of Interior is to rely on evidence supplied by the surface owner, 43 C.F.R. § 3427.2(a)–(d), or evidence obtained independently by the Secretary. 43 C.F.R. § 3427.2(j). In the absence of evidence of qualification, the surface owner is presumed to be unqualified. *Id.* The new regulations also provide that a surface owner's refusal to consent is controlling for the activity planning cycle rather than for the life of the applicable land use plan. *Compare* 43 C.F.R. § 3427.2(j) (1979) *with* 43 C.F.R. § 3427.2(i) (1982). Finally, the 1982 regulations do not stay agency action pending an appeal from the presumption of unqualification.

In 1985, the Department of Interior completed a Final Supplemental Environmental Impact Statement on the Federal Coal Leasing Program. In February 1986, the Department issued a number of decisions regarding the nature and scope of the coal leasing program in a Secretarial Issue Document ("SID"). A number of the changes embodied in the SID rendered claims in plaintiffs' initial complaint moot, while others altered or perpetuated certain of the claims:

(1) The 1986 program requires that land use plans, in the form of RMPs prepared pursuant to 43 C.F.R. § 3420.1–5(e), be utilized for new regional activity planning for competitive coal lease sales. However, the revised program authorizes activity planning that was suspended in 1984 to proceed on the basis of MFPs. Emergency leasing, leasing by application and the processing of preference right applications may likewise be done on the basis of MFPs.

(2) During the course of the 1985–86 review, the Secretary considered the option of adopting reclaimability as one of the unsuitability criteria. The program changes adopted in the SID noted that reclaimability, along with other unsuitability criteria, would receive "increased emphasis" during the land use planning stage, but that the final determination on reclaimability of the tract in question would continue to be made during the review of the mine plan.

(3) The 1986 revisions significantly alter the leasing process and identify a number of points at which public participation in the program is to be increased. These opportunities for public participation are not delineated in regulations but are, instead, relegated to a "competitive coal leasing handbook," an internal agency publication not generally available to the public. Plaintiffs maintain that inclusion of the guidelines for public participation in the handbook rather than in properly promulgated regulations violates § 309(e) of FLPMA, 43 U.S.C. § 1712(f), which directs the Secretary to issue regulations relating to public participation in planning for the use and management of public lands.

## II. ANALYSIS

Defendants' initial challenge in their cross-motion for summary judgment is to plaintiffs' standing to maintain their claims. Defendants argue that the allegations plaintiffs have made in support of their claim of standing, while perhaps adequate to survive a motion to dismiss, are insufficient to meet the burden of proof required at the summary judgment stage. For reasons discussed below, this court finds defendants' argument persuasive and grants summary judgment in defendants' favor.

Defendants have raised their challenge to plaintiffs' standing not at the more familiar motion to dismiss stage, but in a motion for summary judgment. This distinction is an important one which is coming under increased scrutiny in this circuit. In resisting a motion to dismiss, plaintiffs may rely upon the allegations contained in the pleadings alone. The court must construe these allegations in the light most favorable to the plaintiff, *Shear v. National Rifle Association of America,* 606 F.2d 1251, 1253 (D.C.Cir.1979), and may only dismiss the suit when it appears beyond a reasonable doubt that plaintiff can prove no set of facts entitling him or her to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). In contrast, a motion for summary judgment "by definition entails an opportunity for

supplementation of the record, and accordingly a greater showing is demanded of the plaintiff." *Wilderness Society v. Griles*, 824 F.2d 4, 16 (D.C.Cir.1987).

The case law exploring the application of the distinction between a motion to dismiss and a motion for summary judgment in a challenge to standing has its most recent genesis in *United States v. SCRAP*, 412 U.S. 669, 93 S.Ct. 2405, 37 L.Ed.2d 254 (1973). In that case, which has since been recognized as the Court's most expansive application of the standing doctrine in the realm of environmental challenges, the Court noted that the challenge to plaintiff's standing had been raised in a motion to dismiss and that, although the allegations were sufficient to survive at that stage, upon a motion for summary judgment, plaintiff might have to show injury with greater specificity. *Id.* at 689–90 n. 15, 93 S.Ct. at 2417 n. 15. *See also Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Foundation, Inc.*, 484 U.S. 49, 108 S.Ct. 376, 385–86, 98 L.Ed.2d 306 (1987). The Court has subsequently observed that *SCRAP* might indeed have turned out differently had it been before the Court upon a motion for summary judgment. *Simon v. Eastern Kentucky Welfare Rights Organization*, 426 U.S. 26, 45 n. 25, 96 S.Ct. 1917, 1927 n. 25, 48 L.Ed.2d 450 (1976).

Standing doctrine involves both limitations imposed by the "case or controversy" requirement of Article III of the Constitution and certain "prudential considerations." *Valley Forge Christian College v. Americans United for Separation of Church and State*, 454 U.S. 464, 471, 102 S.Ct. 752, 757, 70 L.Ed.2d 700 (1982). The test for standing is a familiar one. The party invoking a federal court's jurisdiction must demonstrate (1) "some actual or threatened injury" that (2) "fairly can be traced to the challenged action" and (3) "is likely to be redressed by a favorable decision." *Id.* at 472, 102 S.Ct. at 758. Prudential considerations require that a plaintiff assert his or her own specific legal interests, rather than that of a third party, and that the plaintiff's complaint "fall within 'the zone of interests to be protected or regulated by the statute or constitutional

guarantee in question.'" *Id.* at 475, 102 S.Ct. at 760 (quoting *Association of Data Processing Service Organizations v. Camp*, 397 U.S. 150, 153, 90 S.Ct. 827, 829, 25 L.Ed.2d 184 (1970)).

■ As this circuit has observed, "standing jurisprudence is a highly case specific endeavor" which turns on the specific allegations of the parties. *National Wildlife Federation v. Hodel*, 839 F.2d 694, 703–04 (D.C.Cir.1988). In the present case, plaintiffs have alleged injury arising out of (1) defendants' continued reliance in certain instances upon the MFP land use plans; (2) the failure of the 1982 and 1986 regulations to include reclaimability in the initial land use planning; (3) the decrease in opportunities for public input into the land use and coal lease planning process; (4) the application of "diligent development" requirements on the date of lease readjustments in pre August 4, 1976 leases; (5) inclusion of what defendants characterize as a "force majeure" provision which could extend the three year period within which operation and reclamation plans are due in the event of interruptions beyond the control of the lessee; (6) changes in the surface owner consent provisions under which a surface owner is presumed to be unqualified if the owner does not submit, or the Secretary cannot independently obtain, adequate proof of qualified status and which make a surface owner's refusal to consent controlling only for the activity planning cycle. In support of these claims of injury, plaintiffs have rested on the bare allegations in the complaint and upon one paragraph in a subsequent pleading which attempts to elucidate the nature of the injuries and the causal link to defendants' actions. The relevant paragraphs of the complaint state:

20. Plaintiff organizations sue on behalf of their members as well as themselves. Plaintiff organizations and their members are suffering and will continue to suffer injury in fact as a result of the challenged actions. Plaintiffs' members include residents, landowners and owners of lands overlying federal coal, who ranch, farm or are engaged in other businesses in areas where federal coal would be leased under the new leasing program. They also include visitors to these

areas. These persons live, work and enjoy recreational and other resources of these areas that will be directly and indirectly affected by the actions challenged in this case. Excessive leasing and subsequent mining of federal coal in these areas threaten these persons with destruction or dimunition of the utility of land for commercial, industrial, agricultural and forestry purposes; increased erosion, landslides, subsidence and floods; pollution of water and air; appropriation of scarce water; destruction of fish and wildlife habitat; impairment of natural beauty; loss of recreational opportunities; damage to the property of citizens; creation of hazards dangerous to life and property; degradation of the quality of life in local communities; vastly increased populations and urbanization; and increases in local taxes and costs of doing business.

21. In addition, each of the plaintiff organizations has an organizational interest in providing its members and/or others with the information which NEPA requires the defendants to compile, analyze and disclose in environmental documents. Each also has an organizational interest in availing itself and its members or others of the opportunities which NEPA affords for public participation in connection with the preparation of such documents. These interests have been adversely affected by the failure of the defendants to prepare, circulate and consider an adequate environmental assessment or environmental impact statement prior to the decision to adopt a new coal leasing program, as alleged below.

Complaint at 8–9.

Plaintiffs also note, in response to defendants' challenge, that

When Federal coal lands are leased, then, well before actual production, land use patterns are changed, the utility of land for purposes other than coal mining is diminished, development, in anticipation of production, occurs, and recreational opportunities may be restricted. *Cf., State of California v. Watt,* 683 F.2d 1253 (9th Cir.1982), *cert. granted,* 461 U.S. 925, 103 S.Ct. 2083, 77 L.Ed.2d 295 (1983) (non-production impacts of Outer Continental Shelf oil and gas leasing on the coastal zone).

Plaintiffs' Reply at 10.

These bare allegations represent the sum total of plaintiffs' support for their claim of standing. The allegations in the complaint have been expressly denied or not admitted by defendants. *See* Answer of Federal Defendant's at 2; Answer of Intervenor–Defendants National Coal Association/American Mining Congress at 3; Answer of Intervenor–Defendant Peabody Coal Company at 2; Answer of Intervenor–Defendant Shell Oil Company at 2. Plaintiffs have not supplemented its standing claim with affidavits, deposition responses, answers to interrogatories or any other documentary evidence of the sort normally entertained by a court at the summry judgment stage. *See* Fed.R.Civ.P. 56.[2]

Defendants claim that plaintiffs have not provided adequate support for any of the elements of standing. In general, defendants challenge plaintiffs' claims of injury as being too speculative and remote. They specifically claim that plaintiffs have not shown that the injuries which plaintiffs allege will arise from mining will in fact arise from either the leasing of new lands or the

---

**2.** The court is at somewhat of a loss to understand why plaintiffs have not availed themselves of the considerable time during which this case has been pending to augment the record in support of standing, as they have augmented the record with supplemental filings addressing their substantive claims. The standing challenge was raised in defendants' original cross-motion for summary judgment filed in 1983 and revisited in supplemental pleadings filed with this court in 1986. Plaintiffs in this case include a number of national environmental groups who are undoubtedly well aware of the developments in standing jurisprudence since *Sierra Club v. Morton,* 405 U.S. 727, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972), which require a particularized showing of injury, causation and redressability. *See, e.g., National Wildlife Federation v. Hodel,* 839 F.2d 694 (D.C.Cir.1988); *Wilderness Society v. Griles,* 824 F.2d 4 (D.C.Cir. 1987). Nevertheless, plaintiffs have chosen to rest upon their filings thus far and it is on those filings that the court today bases its decision.

extension of older leases under Interior's interpretation of the diligent development requirement. They also note that plaintiffs have failed to prove that any of their members own land that could be affected by the change in the surface owner consent provisions. While it is true, as plaintiffs observe, that defendants have not submitted any evidence to support their claim that plaintiffs have not proven their case, such evidence is unnecessary. It is enough that the moving party show—"by pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). The burden of proving standing remains with the plaintiff.

Defendants' position is well taken; plaintiffs have not provided this court with adequate evidence upon which to assess whether their claim of standing has merit. There is no dispute over the fact that surface mining of coal has many far-reaching environmental effects which are of concern to plaintiffs. What has not been shown is that the regulatory program at issue here has injured or threatens to injure the plaintiffs. Plaintiffs have likewise not proven that the injuries allegedly at issue, e.g. pollution of water and air as a result of surface mining, resulted from the challenged regulations. Complaint at 8. The court is well aware that plaintiffs need not show that an injury is directly traceable to the defendant in the case; it need only be "fairly traceable" to the action under challenge. *Allen v. Wright*, 468 U.S. 737, 751, 104 S.Ct. 3315, 3324, 82 L.Ed.2d 556 (1984). If a third party's actions—in this case the successful lessee—are sufficiently dependent upon the defendant's actions, the resulting injury can be considered fairly traceable to the defendant. *Wilderness Society v. Griles*, 824 F.2d at 17. However, in the present case, the total absence of support for plaintiffs' claim that the challenged actions have injured them puts the court in the completely untenable position of having to speculate both as to injury and to the causal relationship. Such pure speculation is an unacceptable basis upon which to ground a party's standing. *Simon*, 426 U.S. at 42–43, 96 S.Ct. at 1926.

## CONCLUSION

For the reasons stated above, summary judgment is granted in favor of the defendants on the grounds that plaintiffs have failed to show that they have standing to maintain this action.