NATIONAL CENTER FOR MAN-
UFACTURING SCIENCES,
Appellant,

v.

DEPARTMENT OF DEFENSE,
et al., Appellees.

No. 98–5576.

United States Court of Appeals,
District of Columbia Circuit.

Argued Oct. 13, 1999.

Decided Jan. 4, 2000.

Stanley Yorsz argued the cause for appellant. With him on the briefs were Jeffrey J. Bresch and Attison L. Barnes, III.

Lisa Goldfluss, Assistant U.S. Attorney, argued the cause for appellees. With her on the briefs were Wilma A. Lewis, U.S. Attorney, and R. Craig Lawrence, Assistant U.S. Attorney.

Before: SENTELLE, ROGERS and TATEL, Circuit Judges.

Opinion for the court filed by Circuit Judge SENTELLE.

SENTELLE, Circuit Judge:

Plaintiff-appellant National Center for Manufacturing Sciences ("NCMS") appeals from a judgment of the district court dismissing its complaint for failure to state a claim. NCMS claims that appellees, Department of Defense ("DOD") and Department of the Air Force ("Air Force") (along with various officials), improperly held back approximately $15 million of funds authorized and appropriated by Congress and earmarked for NCMS. Because we conclude that Congress rescinded the earmark in section 1006 of the National Defense Authorization Act for Fiscal Year 1995, we affirm the district court's dismissal of the action.

## I. Background

NCMS is a non-profit research and development manufacturing consortium that receives funding, in part, through congressional appropriations earmarks. This dispute centers on whether NCMS is entitled to approximately $15 million of an original $40 million earmark appropriated for fiscal year 1994.

On November 11, 1993, Congress appropriated $12,314,362,000 under the heading "Research, Development, Test and Evaluation, Air Force," which was "to remain available for obligation until September 30, 1995." One earmark provision stated: "*Provided further*, That not less than $40,000,000 of the funds appropriated in this paragraph shall be made available only for [NCMS]...." Department of Defense Appropriations Act, 1994 ("1994 Appropriations Act"), Pub L. No. 103–139, 107 Stat. 1418, 1431–33 (1993). Later that month, Congress passed the National Defense Authorization Act for Fiscal Year 1994 ("1994 Authorization Act"), Pub.L. No. 103–160, 107 Stat. 1547 (1993). Section 201 of this act authorized $12,289,211,000 for the Air Force—$25,151,000 short of the amount appropriated. 107 Stat. at 1583.

The Air Force and NCMS entered into a Cooperative Agreement on September 19, 1994, whereupon the Air Force released $24,125,000 of the 1994 funds. The remaining$15,875,000 of the original $40 million was not released, although the agreement said a release could occur if funds were made available for allotment.

On October 5, 1994, Congress passed the National Defense Authorization Act for Fiscal Year 1995 ("1995 Authorization Act"), Pub.L. No. 103–337, 108 Stat. 2663 (1994). Section 1006, in particular subsection 1006(d), refers to the status of 1994 defense appropriations. We set forth the text of the section here:

SEC. 1006. AUTHORITY FOR OBLIGATION OF CERTAIN UNAUTHORIZED FISCAL YEAR 1994 DEFENSE APPROPRIATIONS.

(a) AUTHORITY.—The amounts described in subsection (b) may be obligated and expended for programs, projects, and activities of the Department of Defense in accordance with fiscal year 1994 defense appropriations except as otherwise provided in subsections (c) and (d).

(b) COVERED AMOUNTS.—The amounts referred to in subsection (a) are the amounts provided for programs, projects, and activities of the Department of Defense in fiscal year 1994 defense ap-

propriations that are in excess of the amounts provided for such programs, projects, and activities in fiscal year 1994 defense authorizations.

(c) PROGRAMS NOT AVAILABLE FOR OBLIGATION.—Amounts described in subsection (b) which remain available for obligation on the date of the enactment of this Act may not be obligated or expended for the following programs, projects, and activities of the Department of Defense (for which amounts were provided in fiscal year 1994 defense appropriations): [programs unrelated to NCMS].

(d) MANUFACTURING TECHNOLOGY.—The Secretary of Defense may obligate fiscal year 1994 defense appropriations under the Manufacturing Technology Development program which remain available for obligation on the date of the enactment of this Act in accordance with the competition and cost-sharing requirements of subsection (d) of section 2525 of title 10, United States Code, as amended by section 256 of this Act, notwithstanding any other provision of law that specifies (or has the effect of requiring) that a contract be entered into with, or a grant be made to, a particular institution or entity.

(e) DEFINITIONS.—For the purposes of this section:

(1) FISCAL YEAR 1994 DEFENSE APPROPRIATIONS.—The term "fiscal year 1994 defense appropriations" means amounts appropriated or otherwise made available to the Department of Defense for fiscal year 1994 in the Department of Defense Appropriations Act, 1994 (Public Law 103–139).

(2) FISCAL YEAR 1994 DEFENSE AUTHORIZATIONS.—The term "fiscal year 1994 defense authorizations" means amounts authorized to be appropriated for the Department of Defense for fiscal year 1994 in the National Defense Au-thorization Act for Fiscal Year 1994 (Public Law 103–160).

108 Stat. at 2835–36.

A few weeks prior to the passage of the 1995 Authorization Act, NCMS filed suit in the district court seeking the unpaid $15 million. The complaint invoked the mandamus statute, 28 U.S.C. § 1361 (1994), the Declaratory Judgment Act, 28 U.S.C. § 2201 (1994), the Administrative Procedure Act, 5 U.S.C. §§ 701–06 (1994), and requested specific performance of the Cooperative Agreement. After preliminary injunctive relief was denied, the Air Force filed a motion to dismiss, or in the alternative, to transfer the claim to the Court of Federal Claims as a contract action against the government under the Cooperative Agreement. The district court granted the transfer motion. NCMS appealed to the Federal Circuit, who reversed and remanded to the district court, holding that the action was not a contract action. *See National Ctr. for Mfg. Sciences v. United States,* 114 F.3d 196 (Fed. Cir.1997).

Upon return of the case to the district court, the district court initially denied appellees' motion to dismiss. On reconsideration, however, the court granted the motion to dismiss in December of 1998. Noting that the parties agreed that the $40 million had been both authorized and appropriated, the court held that subsection 1006(d) of the 1995 Authorization Act rescinded the unobligated $15 million. NCMS appeals the dismissal, which we review *de novo. See, e.g., Moore v. Valder,* 65 F.3d 189, 192 (D.C.Cir.1995).

■ Upon initial review of the record, it was unclear whether the Air Force had retained funds with which NCMS's claim could be satisfied. We therefore ordered supplemental briefing prior to oral argument on the issue of mootness in light of *City of Houston v. Department of Hous. and Urban Dev.,* 24 F.3d 1421 (D.C.Cir. 1994). *City of Houston* makes clear that once an appropriation lapses or the relevant funds have been obligated, "a court

cannot reach them in order to award relief." *Id.* at 1426. Taking care to avoid such an "insuperable" difficulty and ensure that we had the power to remedy appellees' alleged wrong, we requested the additional briefing. 13A CHARLES A. WRIGHT, ARTHUR R. MILLER, EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 3533.3 at 231–261 (2d ed. 1984). We find that the case is not moot. Appellees' brief clarifies that while the specific funds referred to by subsection 1006(d) were reallocated, there are sufficient remaining funds in the fiscal year 1994 Research, Development, Test and Evaluation, Air Force account available to liquidate NCMS's claim.

## II. Discussion

■ Section 114 of 10 U.S.C. states, in relevant part, that "[n]o funds may be appropriated for any fiscal year to or for the use of any armed force or obligated or expended for ... any research, development, test, or evaluation, or procurement or production related thereto ... unless funds therefor have been specifically authorized by law." 10 U.S.C. § 114(a)(2) (1994). Authorization acts limit the amount of funds Congress can appropriate for a given purpose. *See* OFFICE OF MANAGEMENT AND BUDGET, THE BUDGET SYSTEM AND CONCEPTS 2–3 (1997). Because of the existence of 10 U.S.C. § 114, it is clear that any monies appropriated for NCMS by Congress for research must be authorized before they can be appropriated and distributed. The parties agree that NCMS's $40 million earmark was both appropriated and authorized. They dispute whether section 1006 rescinded the unpaid portion of that earmark. We hold that it does.

Subsection 1006(d) states that 1994 defense appropriations in NCMS's research province "which remain available for obligation" may be obligated by competition notwithstanding any specific grants otherwise. The $15 million of unreleased funds, which was "available for obligation" because it was already authorized, was thus

freed from its earmark status by this provision. Therefore, NCMS no longer has any rights to the funds on which its claim is based.

■ Attempting to avoid this result, NCMS claims that section 1006 only applies to previously unauthorized funds (i.e., the $25 million shortfall between the 1994 Authorization Act and 1994 Appropriations Act) and thus had no effect on the unreleased $15 million. It also argues that funds are "available for obligation" when they are appropriated. This is generally true because authorization acts generally precede appropriations acts, and not all appropriations require matching authorizations. But funds which must be authorized by statute and are not so authorized cannot be "available for obligation." Because 10 U.S.C. § 114(a)(2) requires authorization of these funds before they become available, appropriation alone is insufficient. Section 1006 itself is an authorization section which would be unnecessary but for the authorization requirement. Therefore, the term "available for obligation" in the context of section 1006 refers to funds that are authorized. Nothing limits the operation of subsection 1006(d) to previously unauthorized funds.

Other subsections, and indeed the title of section 1006, refer to unauthorized funds, but none of those various subsections alter the effect of subsection (d). A brief review of the sections makes this clear.

Subsection (a) provides "AUTHORITY" to "obligate[ ]" certain funds as long as subsection (c) and (d) do not provide otherwise. This subsection was necessary because authorization for defense spending is required by statute. Conferring the required authority by stating the funds "may be obligated," subsection (a) demonstrates that funds "available for obligation" in section 1006 are authorized.

Subsection (b) describes which funds are authorized by subsection (a). The language describes the funds that made up

the $25 million shortfall between the 1994 Authorization Act and 1994 Appropriations Act.

Subsection (c) acts to limit the authority conferred by subsection (a). It requires that the newly authorized funds "may not be obligated or expended" on certain enumerated programs. Note that subsection (c), by its terms, applies only to funds defined in subsection (b).

Subsection (d) operates on its own. It refers to appropriations which remain available for obligation, and it is not limited only to funds authorized via subsection (a). While subsection (c) limits its operation to amounts available for obligation under subsection (b), subsection (d) contains no such limitation. It applies to all funds and not only those freed up by subsection (a).

Although subsection (b) refers to previously unauthorized funds, and subsection (a) refers to what they can be spent on, neither of these subsections modify subsection (d). NCMS argues that the mention of subsection (d) in subsection (a) limits the application of subsection (d) to only unauthorized funds. This has it backwards. Instead, subsection (d) is limiting the operation of subsection (a).

■ Perhaps the matter would have been clearer if Congress had enacted subsection (d) as a freestanding section, but its placement is not illogical. Instead of repeating the language of subsection (d) in subsection (a), it was rational to merely reference subsection (d) and retain it within section 1006. Further, the title of section 1006, which suggests that the entire section addresses only previously unauthorized funds, is also no impediment. The plain meaning of a statute cannot be limited by its title, *see Pennsylvania Dep't of Corrections v. Yeskey,* 524 U.S. 206, 118 S.Ct. 1952, 1956, 141 L.Ed.2d 215 (1998), and provisions in a statute do not always align with its title, *see Hadden v. The Collector,* 72 U.S. (5 Wall.) 107, 110, 18 L.Ed. 518 (1866). There is no reason to cloud the plain meaning of subsection (d) because of its placement in section 1006.

Therefore, we hold that the operation of subsection 1006(d) is not limited to funds authorized by subsection 1006(a). Subsection (d) allowed the funds that NCMS seeks to be obligated pursuant to the competition provisions of 10 U.S.C. § 2525, "notwithstanding" the provision of the 1994 Appropriations Act that "specifie[d]" that "a grant be made to" NCMS. Because NCMS no longer has a legal right to the funds it seeks, it cannot state a claim upon which relief can be granted.

### III. Reconsideration Issue

Appellant raises additional issues which are without merit. While there is no need to comment on the majority of these arguments, we shall devote a small amount of time to one of them.

Appellant claims that the district court improperly granted appellees' motion for reconsideration of the motion to dismiss because, in its view, no clear errors of law existed in the initial ruling. It thus contends that the district court could not reverse itself. Not only is appellant's argument incorrect, it is pointless.

■ True, a district court should not grant a motion for reconsideration unless the moving party shows new facts or clear errors of law which compel the court to change its prior position. *See, e.g., Moro v. Shell Oil Co.,* 91 F.3d 872, 876 (7th Cir.1996); *Assassination Archives & Research Ctr. v. CIA,* 48 F.Supp.2d. 1, 13 (D.D.C.1999). But here the motion was correctly granted based upon on what the court found to be clear errors of law. Even if the district court's finding that clear errors of law existed were incorrect, there is nothing to be gained by appealing that specific holding because an appeal of the underlying merits issue will dispose of the question. If we had held that the district court erred in its interpretation of section 1006, we would have reversed the ruling on the motion to dismiss. It is a

**512**

waste of time to go further and argue that the district court also should not have granted the motion for reconsideration. Because of the merger of the issues, our job is done.

### IV.  Conclusion

We conclude that the district court correctly granted appellees' motion to dismiss for failure to state a claim.  We hold that subsection 1006(d) of the 1995 Authorization Act rescinded the unreleased portion of NCMS's funding earmark for fiscal year 1994.  Accordingly, NCMS has no legal entitlement to the funds claimed.  The district court's judgment is

*Affirmed.*