Alice P. BROUDY, et al., Plaintiffs,

v.

Susan H. MATHER, et al., Defendants.

No. CIV.A. 02–2122(GK).

United States District Court,
District of Columbia.

Aug. 9, 2004.

Douglas John Rosinski, David J. Cynamon, Shaw Pittman, LLP, Washington, DC, for Plaintiffs.

Richard Montague, U.S. Department of Justice, Civil Division, Washington, DC, for Defendants.

## MEMORANDUM OPINION

KESSLER, District Judge.

Plaintiffs represent approximately 220,-000 individuals who participated in activities associated with atomic weapons test detonations between 1945 and 1962 in New Mexico, Nevada, and various locations in the Pacific Ocean, and approximately 195,-000 individuals who served as occupation forces in Hiroshima and Nagasaki, Japan after World War II in 1945 and 1946. Defendants are past and present government officials, employees, and contractors who Plaintiffs allege prevented them from obtaining the service-related death and disability veterans benefits to which they were entitled resulting from exposure to radiation from United States atomic detonations.[1]

Plaintiffs allege that they, or their dependents, "have been, or will be, denied disability, medical, and other compensation because Defendants illegally concealed, and continue to conceal, the medical records and other pertinent radiation dose information necessary to obtain such compensation." Compl. ¶ 1. Plaintiffs assert that Defendants' misconduct precludes them from presenting "evidence to support their substantive VA compensation claims" in violation of their rights under the First and Fifth Amendments to access to the courts and to petition to obtain redress for their grievances. Pls. Opp'n at 11.

This matter is now before the Court on Plaintiffs' Motion for Reconsideration of the Order granting Defendants' motion to dismiss. Upon consideration of the motion, opposition, reply, and the entire record herein, and for the reasons stated below, Plaintiffs' Motion is **granted**.

The Court sincerely regrets that so much time has passed before Plaintiffs' Motion could be decided. The very passage of time, however, has enabled the Court to look afresh at the issues presented herein and conclude that the instant Motion must be granted to correct a clear error of law and to prevent manifest injustice.

## I. BACKGROUND [2]

Between 1945 and 1962, the United States government ordered approximately 220,000 military and civilian personnel to attend, and clean-up from, atomic weapons test detonations in New Mexico, Nevada, and various locations in the Pacific Ocean as part of their military service. Specifically, these individuals were ordered

> to board grossly contaminated naval vessels within a few hours of a nearby underwater atomic detonation; swim and dive in a lagoon so contaminated with radioactive fallout that more than 50 years later it is still unsafe for humans; live and work on ships so grossly contaminated with radioactive material that the vessels had to be sunk in deep water for public safety; lie in open trenches within a few hundred yards of an atomic explosion; charge directly to-

1. Specifically, Defendants are Susan H. Mather, the Department of Veterans Affairs ("VA") Chief Public Health and Environmental Hazards Officer; Neil S. Otchin, the VA's Clinical Matters Program Chief; Robert H. Roswell, the VA's Under Secretary for Health; Steven M. Younger, the Director of the Defense Threat Reduction Agency; D. Michael Schaeffer, the Nuclear Test Personnel Review Program Manager in the Defense Threat Reduction Agency Technology Development Directorate; and other unnamed government officials, employees, and contractors.

2. For purposes of ruling on a motion to dismiss, the factual allegations of the complaint must be presumed to be true and liberally construed in favor of the plaintiff. *Shear v. Nat'l Rifle Ass'n of Am.*, 606 F.2d 1251, 1253 (D.C.Cir.1979). Therefore, the facts set forth herein are taken from Plaintiffs' Complaint or from the undisputed facts presented in the parties' briefs.

wards and through "ground zero" within minutes of an atomic explosion; conduct extended training in areas contaminated by fallout from dozens of atomic detonations; and fly through ... clouds of radioactive debris within minutes of an atomic detonation. Compl., ¶ 33. The primary purpose of most of the atomic weapons testing was to study the immediate or short-term impact of atomic warfare on military personnel and equipment. Compl., ¶¶ 28, 30, 35. In 1945 and 1946, the United States government also ordered approximately 195,000 individuals to serve as occupation forces in Hiroshima and Nagasaki, Japan, where atomic weapons were detonated to end World War II. Compl., ¶ 26. An unknown number of these military personnel were directly or indirectly exposed to dangerous ionizing radiation during their military service. *Id.*.

Since at least the time of the first atomic weapons test detonation in 1946, the United States government has been aware that ionizing radiation from atomic explosions is capable of causing severe health effects. Compl., ¶¶ 32, 33. Despite this long-standing awareness however, the government not only ordered hundreds of thousands of its military and civilian personnel to perform activities which exposed them to high or unknown levels of radiation, but did so giving them little or no information as to the attendant health risks. Compl., ¶ 31. Moreover, what little information the government did provide to these individuals greatly underestimated the risks and the potential for long-term adverse health effects. *Id.*.

Immediately after the first atomic weapons test in 1946, government officials realized that they had failed to fully anticipate how much radioactive contamination and personnel exposure to ionizing radiation would result from the detonation. Compl., ¶¶ 37–40, 42. Accordingly, the govern-ment ordered the creation of special radiological control and safety procedures which required all military personnel who might be exposed to ionizing radiation to wear a radiological monitoring device (i.e., a film badge) at all times. Compl., ¶¶ 72–73. The procedures also required that such personnel undergo special medical tests and physical examinations. The results of these tests were placed in classified "special" medical records and kept separate from the regular military service medical records. Compl., ¶ 44.

On or about August 22, 1951, the Chief, Armed Forces Special Weapons Project ("AFSWP"), directed that a permanent repository be established for exposure records of personnel participating in atomic weapons testing. The reason stated for collecting these records was "because of possible litigation initiated by personnel" suffering "maladies attributed to exposure of radioactivity" from atomic weapons tests. Compl., ¶ 77.

On June 21, 1956, the Surgeon, AFSWP, reported to the Chief of Staff, AFSWP, that "this headquarters has in its physical possession the sum total of all personal film badges exposed at test operations since and including [the first atomic weapons test detonation in 1946]." Compl., ¶ 83. Plaintiffs charge that the United States government has yet to publicly account for the whereabouts of this information, as well as other information related to radiation exposure, which it possessed and/or controlled in 1956 or subsequently obtained. Compl., ¶ 85.

On October 29, 2002, Plaintiffs brought suit alleging that they "have been, or will be, denied disability, medical, and other compensation because Defendants illegally concealed, and continue to conceal, the medical records and other pertinent radiation dose information necessary to obtain such compensation." Compl., ¶ 1. They al-

**4**

lege that Defendants' misconduct regarding their entitlement to veterans benefits has precluded them from presenting "evidence to support their substantive VA compensation claims" in violation of their constitutional right to access to the courts. Pls. Opp'n at 11.

On October 3, 2003, the Court granted Defendants' motion to dismiss. First, the Court held that it "lack[ed] subject matter jurisdiction because Plaintiffs' constitutional claim is cognizable only within [38 U.S.C. § 511,] the exclusive statutory and regulatory scheme governing VA benefits determinations." [3] *Broudy v. Mather*, No. 02cv2122 (GK), October 3, 2003, Mem. Op., at 8. The Court explained that "deciding Plaintiffs' constitutional claim would require the Court to also decide whether Plaintiffs' benefits claims have merit and whether, but for the information concealed and/or destroyed, Plaintiffs should have been awarded veterans benefits." *Id.*, at 9.

Second, the Court held that Plaintiffs had failed to state a valid claim under *Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971) because "no *Bivens* remedy can be recognized for suits against VA employees." *Broudy*, Mem. Op., at 15.

Three days before this Court granted Defendants' motion to dismiss, Judge Rosemary Collyer of this District issued a Memorandum Opinion and Order in *Vietnam Veterans of America, Inc. v. McNamara*, No. 02cv2123 (RC), September 30, 2003 Mem. Op. ("*VVA*"), finding jurisdiction over the federal officials alleged to have prevented a class of military veterans from obtaining benefits "by intentionally concealing and covering up, for decades,

the evidence" of service-related activities "such that plaintiffs cannot prove the connection of their current disabilities to their military service, and therefore cannot receive veterans' benefits." *VVA*, Mem. Op., at 1.

## II. STANDARD OF REVIEW

■ A motion for reconsideration should be granted only if the court "finds that there is an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C.Cir. 1996) (internal citations and quotations omitted). In other words, the moving party must show "new facts or clear errors of law which compel the court to change its prior position." *Nat'l Ctr. for Mfg. Sciences v. Dep't of Def.*, 199 F.3d 507, 511 (D.C.Cir.2000) (internal citation omitted).

## III. ANALYSIS

■ Plaintiffs maintain that "[i]t is in the interest of justice for this Court to reconsider its decision in light of the earlier *VVA* decision and to reconcile or distinguish its conclusion." Pls.' Mot., at 2. Defendants claim that Plaintiffs' Motion must be denied as "the *VVA* decision is not a change in controlling law." Defs.' Opp'n, at 3. They also argue that Plaintiffs are simply attempting to renew legal arguments that they have already made and that this Court has already rejected.

■ Plaintiffs' Motion for Reconsideration must be granted for two reasons. First, this Court's determination that it lacked jurisdiction because resolution of the instant case "would require the Court to also decide" whether "plaintiffs should have been awarded veterans benefits" was

**3.** 38 U.S.C. § 511(a) reserves to the Secretary of Veterans Affairs the exclusive authority to "decide all questions of law and fact necessary to a decision by the Secretary under a law that affects the provision of benefits by the Secretary to veterans or the dependents or survivors of veterans." 38 U.S.C. § 511(a).

clear error. *Broudy*, Mem. Op., at 9. The *VVA* court correctly held that 38 U.S.C. § 511 does not bar the plaintiffs' complaint. It explained that,

> [t]he plaintiffs are not suing about benefits or benefits determinations. They sue to obtain information from records that they assert have been intentionally hidden. Armed with that information, they believe that they will be able to utilize the VA benefits process successfully. This Court need not intrude into the Secretary's exclusive domain in order to determine if the plaintiffs can prove the essential allegations in their complaint.

*VVA*, Mem. Op., at 11. The same is true in the instant case. Thus, in the instant case, as in *VVA*, "the VA benefits program is irrelevant except that it is the venue for the plaintiffs' underlying [constitutional] claims." *Id.*, at 10–11. It must be emphasized that Plaintiffs present an "access to courts" claim, not a "veterans benefits" claim. In resolving the issues raised in this lawsuit, the Court will not be making any determinations about either eligibility for or amounts of pension benefits to which Plaintiffs are entitled. Section 511(a), therefore, does not preclude judicial review in the instant case.

█ Second, this Court's determination that Plaintiffs failed to state a valid *Bivens* claim was also clear error.[4] *Broudy*, Mem. Op., at 15. Defendants argued in their motion to dismiss that Plaintiffs failed to state a valid *Bivens* claim because the exclusive statutory and regulatory scheme governing veterans benefits determinations is a "special factor counseling hesitation in the absence of affirmative

action by Congress." *Bivens*, 403 U.S. at 396, 91 S.Ct. 1999. As discussed *supra*, however, Plaintiffs' claims arise under the Constitution, not the veterans' benefits statute. The specific constitutional right at issue is access to the courts, and our Circuit has held that an official who affirmatively hides information may be liable for civil damages for denial of such a right. *See Harbury v. Deutch*, 233 F.3d 596, 611 (D.C.Cir.2000), rev'd on other grounds, *Christopher v. Harbury*, 536 U.S. 403, 122 S.Ct. 2179, 153 L.Ed.2d 413 (2002). Plaintiffs, therefore, can maintain a *Bivens*-type cause of action in the instant case.

Accordingly, for the foregoing reasons, the October 3, 2003 order granting Defendants' motion to dismiss was based on a clear error of law and Plaintiffs' Motion for Reconsideration must, therefore, be granted.

An Order will issue with this opinion.

### ORDER

Plaintiffs represent approximately 220,-000 individuals who participated in activities associated with atomic weapons test detonations between 1945 and 1962 in New Mexico, Nevada, and various locations in the Pacific Ocean, and approximately 195,-000 individuals who served as occupation forces in Hiroshima and Nagasaki, Japan after World War II in 1945 and 1946. Defendants are past and present government officials, employees, and contractors who Plaintiffs allege prevented them from obtaining the service-related death and disability veterans benefits to which they were entitled resulting from exposure to radiation from United States atomic detonations.[1]

---

4. In *Bivens*, the Supreme Court established that the Constitution *may* support a private cause of action in federal court for money damages against federal officials acting under the color of their authority who violate a person's constitutional rights.

1. Specifically, Defendants are Susan H. Mather, the Department of Veterans Affairs ("VA") Chief Public Health and Environmental Hazards Officer; Neil S. Otchin, the VA's Clinical Matters Program Chief; Robert H. Roswell, the VA's Under Secretary for Health; Steven M. Younger, the Director of the De-

Plaintiffs allege that they, or their dependents, "have been, or will be, denied disability, medical, and other compensation because Defendants illegally concealed, and continue to conceal, the medical records and other pertinent radiation dose information necessary to obtain such compensation." Compl. ¶ 1. Plaintiffs assert that Defendants' misconduct precludes them from presenting "evidence to support their substantive VA compensation claims" in violation of their rights under the First and Fifth Amendments to access to the courts and to petition to obtain redress for their grievances. Pls. Opp'n at 11.

This matter is now before the Court on Plaintiffs' Motion for Reconsideration of the Order granting Defendants' motion to dismiss. Upon consideration of the motion, opposition, reply, and the entire record herein, and for the reasons stated in the accompanying Memorandum Opinion, it is hereby

**ORDERED** that Plaintiffs' Motion for Reconsideration [# 21] is GRANTED; it is further

**ORDERED** that an Initial Scheduling Conference is scheduled for September 8, 2004 at 10:00 a.m.; the parties shall submit their Fed.R.Civ.P. 16.3 statement no later than August 30, 2004.